758 So.2d 987 (2000)
STATE of Louisiana, Appellee,
v.
Raymond WADE, Appellant.
No. 33,121-KA.
Court of Appeal of Louisiana, Second Circuit.
May 15, 2000.
Rehearing Denied June 15, 2000.
*989 Louisiana Appellate Project By Amy C. Ellender Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, D. Bruce Dorris, Shreveport, Brian L. King, Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, KOSTELKA and DREW, JJ.
DREW, J.
Raymond Wade was charged by bill of indictment with First Degree Murder, in violation of La. R.S. 14:30. The state's response to the defendant's motion for bill of particulars indicates that the subsection involved was La. R.S. 14:30A.(1), "the perpetration or attempted perpetration of... armed robbery ... first-degree robbery, [and] simple robbery."
The state's theory of the case was that Raymond Wade was engaged in a "kick the door" robbery of the victim, Carlos ("Jug") Wheeler, when Wheeler was shot and killed. The defense theory is that the defendant and the victim were business associates in a drug deal, were robbed by others, and the victim shot the defendant by accident after the robbery. The defendant was convicted after trial by jury of Second Degree Murder and a mandatory life term without benefit of probation, parole, or suspension of sentence was imposed. This appeal followed.
We affirm.

Assignment of Error No. 1: Insufficiency of evidence to convict.
This is a circumstantial evidence case. No one witnessed the robbery or the homicide, other than the defendant. Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *990 State v. Lilly, 468 So.2d 1154 (La. 1985); State v. Turner, 591 So.2d 391 (La. App. 2d Cir.1991), writ denied, 597 So.2d 1027 (1992).
In all cases where an essential element of the crime is not proven by direct evidence, La. R.S. 15:438 applies. As an evidentiary rule, that statute restrains the fact finder in the first instance, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and, second, to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372 (La.1982); State v. Hammontree, 363 So.2d 1364 (La. 1978).
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La. 1984); State v. Doby, 540 So.2d 1008 (La. App. 2d Cir.), writ denied, 544 So.2d 398 (1989).
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, supra. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, U.S. cert. denied; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Second degree murder is the killing of a human being when the offender either has a specific intent to kill or inflict great bodily harm, or is engaged in the perpetration or attempted perpetration of specifically enumerated crimes, including armed robbery, first degree robbery, or simple robbery, even when the offender has no intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1) and (2)(a). Even though a person does not directly commit the act constituting the offense, the person may still be convicted of the offense if found to be a principal. A principal is defined as "(A)ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly counsel or procure another to commit the crime...." La. R.S. 14:24.
Thus, in order to convict the defendant of second degree murder, the jury must have found either that he specifically intended to kill or inflict great bodily harm upon Wheeler, or that he was engaged in the perpetration of a robbery upon Wheeler, possibly along with another unknown assailant when Wheeler was killed, without *991 the specific intent to kill or inflict great bodily harm upon Wheeler.
Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while either armed with a dangerous weapon, believed to be armed, or unarmed. La. R.S. 14:64, 14:64.1, 14:65.
The state's evidence shows, and the defendant's own testimony supports, that a robbery occurred at Wheeler's residence. Two people testified that the victim was unable to get into his own residence because he did not have a key. When the victim was found, the door jamb and door were damaged. The victim was found with his pockets turned out, his money and jewelry missing, and with his legs partially tied. An assault rifle that had been fired was found under the victim, and a bullet, shown to have been fired from that weapon, was recovered from the defendant's body. The defendant's blood was found on the ground outside, a cap, a chair, a .380 pistol, and in a blood trail which led from the backyard away from the house. The.380 pistol, admittedly the defendant's, had been fired at least once and a partially ejected shell had jammed the gun. The victim died of a .45 caliber bullet wound. Casings of .45 caliber were found in the yard of the residence. A .380 shell casing was also found in the yard.
The analysis of the sufficiency of evidence to convict must begin with the recognition that this case is one of a mixed nature, i.e., while there is direct evidence (the defendant was an admitted eyewitness) and circumstantial evidence surrounding these events, the evidence that the defendant was involved in the commission of the offense, and not a victim of it, is wholly circumstantial.
There is no argument that the victim was robbed of money and jewelry (and, to the extent that the defendant can be believed) of drugs also. There is no argument that the victim was shot and killed by one or more persons, either engaged in one of the robberies, or who specifically intended to kill him, or at least who specifically intended to inflict great bodily harm.
However, to convict this defendant, the jury would have had to conclude that the circumstantial evidence was sufficient, beyond a reasonable doubt, to show that he was a principal to this crime. The following evidence is sufficient, viewed in a light most favorable to the prosecution, to convince a rational trier of fact of the defendant's guilt.
(1) The defendant was at the scene of the killing. Defendant's admissions and the DNA typing of the defendant's blood left at the scene confirm this.
(2) At the scene of the killing, the defendant fired a shot from a .380 semi-automatic firearm. This is proven by his own admissions to police and by his blood on the weapon.
(3) The defendant fled from the scene, although clearly in need of medical attention from the gunshot wound. He falsified his name at the hospital to attempt to conceal his identity. Evidence of flight, concealment, and attempt to avoid apprehension is relevant because it indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Emerson, 31-408 (La.App.2d Cir.12/9/98), 722 So.2d 373, writ denied, 99-1518 (La.10/15/99), 748 So.2d 470; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992). Although the defendant attempted to explain his flight and concealment of his identity as resulting from outstanding warrants for his arrest, a rational fact-finder could weigh these factors against him.
(4) Most damaging to his claim that he was defending himself and the victim from a robbery, and most supportive of the state's theory of the case, was the presence of the .380 shell casing in the yard. This indicates, circumstantially, that the *992 person firing the .380 was in the yard, with the person firing the fatal .45 caliber shot, and not in the house with the victim, shooting at robbers in self-defense. It must be noted that the state presented no evidence about how bullet casings may or do behave (how or how far they will bounce). However, the defense offered no expert testimony either, leaving the jurors to their ordinary experiences to determine what circumstances would most likely have generated the location of the shell casings found by the officers at the scene. The most likely circumstance is that the defendant was standing with and shooting in concert with, the person who fired the .45 that killed the victim. An alternative rational explanation of the events is that the shell casings were close to each other in the yard because defendant was firing both guns, and later discarded only the one that jammed.
(5) The multitude of statements given by the defendant, which were adjusted to fit the facts as they were given to the defendant by his interviewers, is an additional credibility factor weighing against the defendant. If, because of the defendant's repeated lies, he renders himself an incredible witness, this lack of credibility can make his claims less likely, and make the state's claim, that the defendant is a robber and murderer more likely. The defendant's claims of victim status are unworthy of belief and a rational trier of fact would be justified in discarding every statement he made, except for his admissions that were proven by other evidence (his presence at the scene, his firing of a gun, his flight from the scene, and the route of his flight).
(6) Defendant's contentions that Wheeler was killed and he was injured in a shootout which occurred when a drug deal went bad and that he and Wheeler were bound by unknown assailants are belied by the testimony of Ken Brossette who testified he left the victim outside watering his yard. When Brossette received a concerned call about Wheeler from Wheeler's girlfriend, he returned no more than ten minutes later. Brossette discovered the victim whose legs were bound. The phone cord that allegedly bound the defendant was never found.
Although circumstantial, the evidence presented by the state is sufficient, beyond a reasonable doubt, to exclude any reasonable hypothesis of innocence, and to convict the defendant of murder. The defendant's evidence does not raise a possible alternative hypothesis that is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.

Assignment of Error # 2. The trial court erred in failing to sustain defendant's Batson objections during jury selection.
The defendant claims that there was a systematic exclusion of African American jurors in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The Batson holding is codified in our law as La. C. Cr. P. art. 795(C) which provides:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or the defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
To make a Batson claim against the state, the defendant must first establish a prima facie case that the state exercised its peremptory challenges to exclude members of the jury venire solely on the basis of their cognizable race. *993 Batson, supra; State v. Green, 94-0887 (La.05/22/95), 655 So.2d 272. The state need not give an explanation for its use of a peremptory challenge if the trial court does not find that the defense has made a prima facie case, but many trial courts do so in order to create a complete record. State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992).

State v. Harrison, 32-643 (La. App.2d Cir.10/27/99),743 So.2d 883, 885.
The trial court here found no prima facie showing of the exercise of peremptory challenges on the basis of race. However, for appellate review and record completion purposes, the trial court allowed the state to present its reasons for exercising its peremptory challenges.
Since this was presented to the jury as a capital murder case, many of the challenges were directed at those who equivocated on their willingness to apply the death penalty.
Under the Batson analysis, as applicable also to peremptory challenges by the defense under [Georgia v.]McCollum[ 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)] and [State v.]Knox[ 609 So.2d 803 (La.1992)], the ultimate burden of persuasion remains on the party objecting to the challenge to prove purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam); Hernandez v. New York, 500 U.S. 352, [97-0338 La. 4] 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The trial judge ultimately determines whether the proffered race-neutral reason is plausible, persuasive or substantiated by the record. State v. Green, 94-0887, p. 9; 655 So.2d 272, 289 (La.1995). "[T]he proper inquiry in the final stage of the Batson analysis is not whether the [challenger] has disproved the existence of purposeful discrimination suggested by the [opponent's] prima facie case; rather, the question is whether the [opponent's] proof, when weighed against the [challenger's] proffered `race-neutral' reasons, is strong enough to persuade the trier-of-fact that such discriminatory intent is present." Green at 29; 655 So.2d at 290. The ultimate focus of the Batson inquiry is on the challenger's intent at the time of the strike. Green at p. 2; 655 So.2d at 287. The trial court should examine all of the evidence available. Patterns of strikes and other statements or actions by the challenger during the voir dire may support a finding of discriminatory intent. Green at 24; 655 So.2d at 288. See also State v. Thompson, 516 So.2d 349, 353 (La.1987) (quoting from Batson).

State v. Tyler, 723 So.2d 939, 943 (La.1998); U.S. cert. denied.

The state excused Kerrick Martin because he seemed uncomfortable with the death penalty. His voir dire examination began with his indicating that he was against the death penalty. Later, he indicated that, depending on the evidence, he could apply the death penalty. Hesitation to apply the death penalty has been held to be a race-neutral basis for use of a peremptory challenge. State v. Hobley, 98-2460 (La.12/15/99), 752 So.2d 771
According to the state, Clarence Bell was the only jury venireman who put only his name and address on the questionnaire. The prosecutor further indicated that Bell crossed his arms and "eyed him suspiciously" during voir dire examination. Most importantly, the prosecutor adverted to Bell's lack of understanding that the jury determined the sentence to be imposed. These are race-neutral reasons for excusing Clarence Bell.
The state indicated it was concerned about whether Sandra Smith Bell's lack of education (9th grade) would impair her in considering the DNA evidence. She also indicated her technical willingness but actual reluctance to apply the death penalty. Under Hobley, supra, this is an acceptable race-neutral reason for a peremptory challenge.
*994 The state indicated it excused Dukes to try to get to Losey, a jury venireman more firmly in favor of the death penalty. Responding to a situation in which a store clerk was killed while defending himself, Dukes posited that this situation would not qualify for the death penalty which would be appropriate only if the robber killed the clerk before he saw a gun or if the robber had the plan to kill "in his mind for a long time." The avoidance of Dukes as a juror in preference for another jury venireman seems to be a race-neutral reason for the exercise of a peremptory challenge.

Assignment of Error # 3. The trial court erred by prohibiting a witness from testifying about the victim's drug activity.
Rachel Moran identified Carlos Wheeler as her boyfriend of almost four years. When Wheeler dropped off the keys to Moran at the bachelorette party she attended, he was wearing a white T-shirt, blue jeans, three rings, a necklace, a bracelet, and a watch. Deputy Duddy, who examined Wheeler's body later that evening, found no jewelry on his person, with his pockets emptied.
The next morning, Moran was able to enter the residence. She found it in disarray. The jewelry box on the dresser which had contained jewelry of Wheeler, Moran, and the children living in the residence, was gone. On cross-examination, she alleged that the jewelry was solid gold, and that cash in excess of $1,000 had also been taken.
On cross-examination, Moran acknowledged that she had been convicted of possession of crack cocaine. She took the position that she did not possess firearms but that Wheeler did. She described the guns as a 9 mm and either an SK or an AK. Moran indicated that the assault rifle was kept either in the closet or under the bed at night. Moran further testified that she knew she was not allowed to be around handguns or rifles, stating that she did not know how long Wheeler had possessed the assault rifle.
The court released the jury for the evening and then put on the record an objection urged earlier to a defense question about the source of the money which was taken. The trial court disallowed the question but allowed an offer of proof. Moran was asked the source of the money and indicated that the victim did not have a job and sold marijuana. The trial court found that the question would result in an impermissible attack on the character of the victim, being based on speculation by the witness about the source of these funds. The court found that any possible probative value of the evidence was outweighed by the prejudicial effect of that evidence.
On the other hand, the defense urged as a theory of the case that the killing occurred during a drug deal gone bad, apparently unrelated to any robbery, and that Moran's statements that the defendant's money came from selling marijuana would support this defense theory. The trial court refused to allow this testimony to be admitted before the jury.
Art. 404. Character evidence generally not admissible in civil or criminal trial to prove conduct; exceptions; other criminal acts
A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character, such as a moral quality, offered by an accused, or by the prosecution to rebut the character evidence; provided that such evidence shall be restricted to showing those moral qualities pertinent to the crime with which he is charged, and that character evidence cannot destroy conclusive evidence of guilt.
(2) Character of victim.
(a) Except as provided in Article 412, evidence of a pertinent trait of character, *995 such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible; or
(b) Evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
(3) Character of witness. Evidence of the character of a witness, as provided in Articles 607, 608, and 609.
B. Other crimes, wrongs, or acts.
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible; provided that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible.
Moran's testimony on the proffer, which at first claimed ignorance of the source of the victim's funds or his work, finally clearly admitted that he dealt in marijuana, a fact which dovetails with the defendant's theory of the case.
La. C.E. art. 401. Definition of "relevant evidence"
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La. C.E. art. 402. Relevant evidence generally admissible; irrelevant evidence inadmissible
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence *996 which is not relevant is not admissible.
Moran's admission under oath (but outside of the presence of the jury) that the victim sold marijuana somewhat supports the defendant's later story that the death of the victim occurred during, or in relation to a drug deal, not a robbery. Rather than merely being an unfair attack on the victim's character, this statement can be construed as relevant, admissible evidence. And, in fact, the defendant was not making an attack on the victim's character as in the hostile demonstration/overt act self-defense claims. In those cases and homicide cases generally, an attempt is frequently made, which La.C.Cr.P. art. 404 prohibits, to paint the victim as a bad person deserving his fate, death at the hands of the defendant. However, this is not necessarily the case here. The defendant, although he did seek to introduce evidence which reflected badly on the victim, did so arguably to support his story of the events that led to the victim's death. The allegation of the victim's girlfriend that the victim dealt in drugs could have made it marginally more arguable that his death arose out of that conduct, instead of a house-jacking robbery. This is so, even though she could not, apparently, say the victim was peddling drugs on the night of his death.
Although the evidence was relevant, the exclusion of the drug dealing evidence concerning the victim was harmless, when examined in the light of this entire record.
This record reveals:
(1) A defendant who tells lie after lie about what happened on this evening, starting with the detectives at the hospital, continuing into the trial itself;
(2) A defendant who is called a liar in open court by his own lawyer;
(3) A defendant who changes his story to reflect known facts;
(4) A .380 shell casing found in the yard (our emphasis), showing that the defendant lied about where he was when the gunfight took place.
(5) Testimony by Dr. George McCormick, as to the angle (our emphasis) of bullet wounds in the victim and the defendant, said sworn expert testimony being inopposite to the testimony of the defendant about location and activity of the players during the gunfight;
(6) Ample testimony in the record (marijuana, cash and jewelry) for a reasonable juror to infer that the victim was involved in the drug trade; and
(7) The very body of the decedent, when discovered, was loosely-trussed, stripped of jewelry, pockets emptied and turned inside-out, buttressing the "house-robbery" angle of the state.
This erroneously excluded evidence would have been merely cumulative to evidence presented to the jury. There is no appreciable chance that this withheld evidence might have somehow contributed to defendant's conviction of the responsive crime of second degree murder. This error was harmless far beyond a reasonable doubt. See discussions in State v. Casey, 99-0023 (La.1/26/00), ___ So.2d ___, 2000 WL 101212, which dealt with improperly excluded videotape evidence; and State v. Harris, 97-0300 (La.4/14/98), 711 So.2d 266, which dealt with improperly admitted evidence.

Assignment of Error No. 4. The trial court erred in allowing references to prior crimes of defendant.
The "other crimes" evidence was the defendant's statements about having outstanding warrants, to explain why he fled the police and gave a false name at the hospital. In this case, this is not normal prejudicial "other crimes" evidence. This evidence, as shown by the defendant's testimony, is in fact helpful to his case, because it explains and rebuts negative inferences of guilt arising from the defendant's flight from the scene and his attempt to evade detection by the giving of a false name at the hospital. Evidence of flight, concealment and attempt *997 to avoid apprehension is relevant to guilt. See State v. Smith, 26,661 (La.App.2d Cir.3/1/95), 651 So.2d 890, writ denied, 95-0918 (La.9/15/95), 660 So.2d 458, writ denied, 95-0995 (La.1/29/97), 687 So.2d 378, writ denied, 95-1598 (La.2/7/97), 688 So.2d 493.
The introduction of the defendant's own exculpatory statements as to why he fled and gave a false name, combined with the cumulative effect of his testimony at trial, results in a showing that there was no substantial prejudice to his rights in the admission of this evidence. La.C.Cr.P. art. 921 provides that "a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." This assignment of error is meritless.

DECREE
The defendant's conviction and sentence are AFFIRMED.
WILLIAMS, J., dissents with written reasons to follow.
WILLIAMS, J., dissenting.
I respectfully dissent.
The majority correctly concludes that the excluded evidence was both relevant and admissible. The defendant's line of questioning was not presented as an unfair attack on the victim's character, but, rather, as support for defendant's version of the events that led to the victim's death. The fact that the victim was dealing drugs makes it arguably more likely that his death arose out of that behavior.
Despite the majority's conclusion to the contrary, the trial court's refusal to allow the testimony to be admitted before the jury cannot be considered harmless error. The defense urged as a theory of the case that the killing occurred during a drug deal gone bad, and the witness' statement that the defendant's money came from selling marijuana would support the defense theory. The evidence of the victim's drug activity had not been presented to the jury in any way other than through the defendant's statements. The defendant's credibility was so lacking that any extraneous support for his claims could only have assisted in his defense. In sum, this defendant was denied his constitutional right to present a defense by the trial court's erroneous exclusion of this evidence. U.S.C.A. Const. Amend. VI; La. Const. Art.1, § 16; Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Hamilton, 441 So.2d 1192 (La.1983). This type of error cannot be considered harmless. Therefore, I would reverse this defendant's conviction, vacate the sentence and remand this case for retrial.

APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, PEATROSS, KOSTELKA, and DREW, JJ.
Rehearing denied.