h STEWART, J.
The defendant, Talonzo Detroit Debrow, was charged by grand jury indictment with the second degree murder of Carl Gilliam. By a vote of eleven to one, a jury found the defendant guilty as charged. The trial court imposed the mandatory sentence of life imprisonment. The sole assignment of error on appeal is whether the evidence is sufficient to support the guilty verdict. The defendant challenges the reliability of the identification linking him to the crime. We find the evidence sufficient to support the guilty verdict and affirm.
FACTS
On the night of June 6, 1999, the defendant and some companions crashed a private party at a hall on Exposition Street in Shreveport, Louisiana. The party was planned by and for some employees of Horseshoe Casino. Problems immediately ensued when the defendant and his companions attempted to take liquor from the party as it was ending. The liquor was returned after a confrontation with Sha-quita Mosely, one of the party planners. The defendant, who was seen at the party wearing a red striped shirt, was heard saying that if he did not get the liquor, then he would get or “jack” somebody. Soon thereafter, the defendant approached Carl Gilliam who was sitting in his automobile in a parking lot. A gunshot was heard. Gilliam exited his car and fell to the ground as the defendant was seen jogging away. More shots were fired as Steve Brown and others approached to help Gilliam. Brown was hit by a bullet. Brown and Gilliam were taken to Louisiana State University Medical Center (“LSUMC”). Gilliam died as a result of his injuries from the gunshot. Brown recovered.
|gThe defendant was subsequently arrested for the murder. Execution of two search warrants led to the recovery of a red striped shirt and a .25 caliber handgun. The defendant gave two statements to the police. In the first statement, he admitted wearing a red striped shirt the night of the murder, taking liquor from the party then returning it when confronted, planning with his companions to rob someone at the party, and approaching Gilliam’s car with his companion Peter Shine to commit robbery. The defendant claimed not to have had a gun on him. He stated that his companion, Peter Shine, was the triggerman. In the second statement, the defendant indicated that he did have a .25 caliber gun in his possession during the course of the evening, but that Peter Shine gave him the gun to hold and that he gave it back to Shine just before they approached Gilliam. The defendant was brought to trial before a jury, found guilty as charged, and sentenced to life imprisonment. This appeal followed.
*1199 DISCUSSION
Although the defendant challenges the sufficiency of the evidence, the record does not reflect that he filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. This court has held that sufficiency arguments will be considered in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
Our review of sufficiency of the evidence claims is controlled by the standard enunciated in Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, “the appellate court must determine that the evidence, viewed in the light most favorable to the | aprosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984). Both direct and circumstantial evidence, taken together, must be sufficient to satisfy a rational juror of the defendant’s guilt beyond a reasonable doubt. State v. Jacobs, 504 So.2d 817 (La.1987).
Appellate authority to review questions of fact in a criminal case is limited to the sufficiency evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). Great deference is due a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
Second degree murder is the killing of a human being when the offender either has a specific intent to kill or inflict |4great bodily harm, or is engaged in the perpetration or attempted perpetration of specifically enumerated crimes, including armed robbery, first degree robbery, and simple robbery, even when the offender has no intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Thus, to convict the defendant of second degree murder, the jury must have determined either that he had specific intent to kill or inflict great bodily harm or that he was engaged in the perpetration or attempted perpetration of one of the enumerated crimes, even though he had no specific intent to kill or inflict great bodily harm.
A person who does not directly commit the act constituting the offense may still be convicted as a principal. State v. Wade, 33,121 (La.App.2d Cir.5/15/00), 758 So.2d 987, rehearing denied, writ denied, 2000-2160 (La.9/28/01), 797 So.2d 684. All persons who are “concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly counsel or procure another to commit the crime are principals.” La. R.S. 14:24.
Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, while either armed with a dangerous weapon, believed to be so armed, or unarmed. La. R.S. 14:64, 14:64.1, 14:65; State v. Wade, supra. Any person who has “a specific intent to commit a crime” and “does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt ... and it shall be immaterial *1200 whether, under the circumstances, he would have actually accomplished his purpose.” La. R.S. 14:27(A). For the crime of attempted armed robbery, the act of taking something of value need not be established so long as the evidence is sufficient to establish the intent to take something |sof value. La. R.S. 14:27(A); La. R.S. 14:64(A); State v. McNeal, 34,593 (La.App.2d Cir.4/4/01), 785 So.2d 957; State v. Trepagnier, 97-2427 (La.App. 4th Cir.9/15/99), 744 So.2d 181; State v. Stone, 615 So.2d 38 (La.App. 3rd Cir.1993), writ denied, 623 So.2d 1302 (La.1993).
In arguing that the evidence is not sufficient to support his conviction for second degree murder, the defendant raises the issue of misidentification. The defendant asserts that absent a suspect identification given by Rickey Moore, a witness, no other evidence links him to the crime. This narrow argument focuses on whether the defendant was correctly identified as the triggerman who shot Carl Gilliam and ignores other eyewitness testimony placing the defendant at the scene of the crime, as well as the defendant’s own taped statement in which he admits that he planned a robbery with his companions and approached Gilliam’s car for that purpose.
Rickey Moore, who attended the party, testified that he had known the defendant for “quite a few years.” He saw the defendant at the party with some other individuals and spoke with the defendant. The defendant’s hair was styled with “dum-dums,” which Moore described as plats with rubber bands and a ball. The defendant and a companion asked if anyone had weapons on them. He heard the defendant and his companion discuss their intent to “jack somebody.” Moore testified that he saw the defendant walk up to Gilliam’s car, reach in the car, and shoot Gilliam. He saw Gilliam hit the ground after being shot. Moore testified that the defendant had a .22 caliber revolver in his hand. He heard the gunshot and saw the | (¡defendant jogging away from the car after the shooting. He later identified the defendant in a photographic lineup and again at trial as the person he saw at the party.
Johnny Hines attended the party with Rickey Moore. Hines testified that while talking outside with Moore and Steve Brown, two men came up to them and asked whether they had guns. He described one of the men as having “dingdongs” in his hair and wearing red and black flannel. The other man had on blue jeans and a dark shirt. About ten minutes after the two men walked off, Hines heard gunfire which he believed came from inside Gilliam’s car. He saw Gilliam exit his car and fall to the ground. Hines heard a second round of gunfire which resulted in Steve Brown being hit.
Steve Brown testified that while talking with Johnny Hines and Ricky Moore, two men approached them. He described one of the men as wearing a red striped shirt. He also described this same man as having “puffy” hair, which could have been styled as “dum-dums.” He recalled this man saying something about guns and “looking to get somebody.” When asked what it means to “jack” somebody, Brown explained that it means to take whatever another person might have. Brown testified that he saw a struggle going on in Gilliam’s car. He saw the man wearing the red striped shirt jump out of the passenger side of Gilliam’s car at the same time that he heard gunfire. Brown proceeded to run to Gilliam’s car when more gunfire erupted. He was hit on the side by gunfire but did not see who shot him. Brown also 17testified that the first gunfire sounded as though it came from a small caliber weapon.
Recordoz Nedd also attended the party. Nedd testified that he walked with Gilliam *1201 to his car in the parking lot and spoke to Gilliam for about ten or fifteen minutes. Gilliam was seated in his car, and Nedd stood outside the car. As his conversation with Gilliam ended, Nedd saw two men walking toward them. Nedd denied telling police that six males approached the vehicle. Although he did not get a good look at the faces of the two men and was not able to positively identify the defendant in a photographic lineup, Nedd did recall that one of the men had hair styled in plats or little balls and wore a red striped shirt. Nedd testified that he heard his name called as he was walking away from Gilliam’s car. He turned around and saw Gilliam struggling in his vehicle with the two men. As he headed to Gilliam’s car, he heard a gunshot which sounded like it came from a .22 caliber weapon. The two men ran from Gilliam’s car toward some trees as Gilliam got out of his car and fell to the ground. Nedd testified that he heard Steve Brown say something to the fleeing men, more gunshots erupted, and Brown was hit.
Another witness, Shaquita Mosely, confronted the men who had taken liquor from the party. She testified that as she walked away from them, she heard one say that if they did not get the liquor, they would get somebody.
According to Dr. Steven Cogswell, the Chief Deputy Coroner of Caddo Parish, the bullet removed from Gilliam’s body near his right kidney 1 Swas “approximately .25 caliber,” which he described as a small bullet. However, there was testimony from Richard Beighley of the North Louisiana Crime Lab indicating that the bullet recovered from Gilliam’s body could not have been fired from a gun recovered in conjunction with the execution of a search warrant. Thus, the murder weapon was not recovered.
The most damaging evidence linking the defendant to the crime was provided by the defendant’s own taped statements which were played for the jury and introduced into evidence. In his first statement, the defendant admitted attending the party with a group of friends, taking some of the liquor and then returning it when confronted about it. He admitted planning with his friends, whom he identified as Peter Shine, Robert, Kendrick, and Frog, to rob someone of money, a car, or anything. Moreover, he admitted approaching Gilliam’s car with Peter Shine. The defendant denied having a weapon, but stated that Peter Shine had a .25 caliber gun. The defendant stated that Peter Shine shot Gilliam, then they ran off. The defendant also admitted to wearing what he described as a red and blue striped shirt. In the second taped statement, the defendant said that he did have the .25 caliber gun on him before approaching Gilliam. He claimed that Peter Shine gave him the weapon to hold and that he handed the weapon back to Shine when they were about eight feet from Gilliam’s car.
Donna Lott, a detective with the Shreveport Police Department, participated, along with another detective, in the interviews during which the defendant’s statements were made. She recounted what the tapes |nrevealed, namely the defendant’s involvement in planning a robbery and approaching Gilliam’s car for that purpose.
The state also presented the testimony of Marlin Shine, also known as “Peter.” Shine testified that the defendant had a gun on his hip while at the party. Shine further testified that the defendant alone approached a car in the parking lot. He heard gunfire in the parking lot, turned, *1202 and ran away. He stated that the defendant alone went to Gilliam’s car in the parking lot.
The only testimony presented by the defense was that of Officer G.P. Vincent of the SPD. Officer Vincent investigated Gilliam’s murder and spoke with witnesses at LSUMC the night of the shooting. He testified that Recordoz Nedd stated that six males approached Gilliam’s car. However, he also testified that Nedd stated that he saw Gilliam struggling with two men in the car.
Based on the evidence presented at trial, we find no merit in the defendant’s mis-identification argument. This is not a case in which identification is at issue. The defendant, through his own statements, placed himself at the crime scene and implicated himself in planning to rob someone and approaching Gilliam’s car for that purpose. Rickey Moore, who had known the defendant for some years, identified the defendant as the individual whom he saw at Gilliam’s car when the shooting occurred. The description of the defendant given by Moore was consistent with the descriptions given by other witnesses of a man whom they saw either approaching Gilliam’s car, struggling with Gilliam, or fleeing after the shooting. This description pointed to a man wearing a shirt with red stripes |inand having puffy hair styled in “dum-dums” or plats with balls. The defendant admitted in his taped statement to wearing a shirt with red stripes that night. Also, Marlin Shine testified that the defendant alone went to Gilliam’s car and that the defendant had a weapon.
The evidence further shows that Moore, Steve Brown, and Shaquita Mosely heard statements by the defendant or those with him indicating their intent to rob someone at the party. The defendant admitted in his taped statements that he and his companions planned to rob someone at the party. Although it was not shown that anything of value was taken from the victim, the evidence, including the defendant’s own statements and overheard remarks made by the defendant and his companions regarding getting or jacking someone, is sufficient to show the defendant intended to take something of value when he approached Gilliam.
In this case, the jury could have found the defendant guilty of second degree murder either because they believed the testimony of Rickey Moore who identified the defendant as the man who shot Gilliam, or because they could have determined that the evidence established that Gilliam was shot during an attempted armed robbery either by the defendant alone or with a companion. Either way, the evidence, when viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all the elements of the crime of second degree murder had been proved beyond a reasonable doubt. The defendant’s assignment of error is without merit.
_[uCON CLUSION
The defendant’s conviction for the crime of second degree murder and sentence of life imprisonment are affirmed.
AFFIRMED.