803 So.2d 256 (2001)
STATE of Louisiana, Appellee,
v.
Ariedell DAVIS, Appellant.
No. 35,298-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*257 Louisiana Appellate Project by Carey J. Ellis, III, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Suzanne Owen, J. Thomas Butler, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, GASKINS & PEATROSS, JJ.
PEATROSS, J.
Defendant, Ariedell Davis, was charged with aggravated rape of his 16-year-old stepdaughter, R.W., arising from an incident which occurred on April 27, 1999. After trial by jury, Defendant was found guilty as charged. Defendant's Motions for New Trial and for Post Verdict Judgment of Modification were denied; and, after waiving delays, the trial court sentenced Defendant to serve at hard labor for the remainder of his life. Defendant appeals, alleging that the State failed to present sufficient evidence to support the verdict, a conviction of aggravated rape. We find Defendant's assignment of error without merit; and, therefore, we affirm his conviction and sentence.

FACTS
The trial of this matter revealed the following course of events. According to R.W., she was beaten with a hammer and raped by Defendant, her stepfather, on the evening of April 27, 1999. R.W.'s boyfriend had been visiting with her at her house just prior to the attack. The two had had sexual intercourse in R.W.'s bedroom; and, when the two realized that Defendant was in the house, her boyfriend left through a door that led from R.W.'s bedroom to the outside. R.W. then went from her bedroom to the living room, retrieved some school books and began her homework. Defendant approached R.W. and asked her "why had she done this to him." Confused by this inquiry, R.W. asked what Defendant meant. Defendant did not answer R.W.; instead, he hit her with his fist on the side of her face and began to drag her across the living room floor. R.W. fought with Defendant, trying to get off the floor. The two struggled *258 into the dining room, where Defendant reached into a nearby drawer and obtained a hammer with which he repeatedly struck R.W. on her head, knees and hands. R.W. testified that, as Defendant beat her, he threatened her life. R.W. continued to resist, however; and Defendant dragged her into a back room of the house, where he tore off her underwear and raped her. Defendant did not wear a condom.
During the encounter, Defendant lay on R.W.'s face to subdue her, but R.W. then bit Defendant on the chest. While raping R.W., Defendant continued to beat her with the hammer. After Defendant finished raping R.W., he instructed her to walk to the restroom and to put a towel on her head where it was swollen, while he retrieved some ice from the kitchen. R.W. took this opportunity to run out of the house to a neighbor's, Carolyn Willis, home. Ms. Willis called 911 and the police and medical assistance arrived shortly thereafter.
When the police searched the house, they found it in a state of disarray, consistent with a struggle as described by R.W. Defendant, however, was not there. Two days later, Defendant voluntarily went to the police station, gave a statement and was subsequently arrested. In his statement, Defendant claimed that an altercation had ensued between himself, R.W. and R.W.'s boyfriend and that Defendant had "tapped" R.W. with a hammer. Defendant denied raping R.W; in fact, he claimed that he and R.W. had never had sexual intercourse and that there was no way any evidence could be found to prove otherwise.
At trial, Ms. Willis testified that, at about 5:30 in the afternoon, R.W. ran to her back door, screaming that "Dell" had raped her ("Dell" being the victim's stepfather's nickname). According to Ms. Willis' testimony, R.W.'s clothes had blood on them and her head was bleeding in three or four places. Ms. Willis applied pressure on the head wounds and, as previously stated, called 911 for police and medical assistance.
Shreveport Police Sergeant Larry Cunningham responded to the call concerning the rape. When he arrived, the fire department EMS unit was already on the scene treating R.W. Sergeant Cunningham testified that he briefly spoke with R.W. and that she reported that she had been beaten with a hammer and raped by her stepfather. According to Sergeant Cunningham, R.W. was badly beaten and was upset. Officer Stacy Adams was the female officer who went to LSU Medical Center to speak to R.W. Officer Adams testified that R.W. had blood on her hands, face and clothing and appeared very scared.
Dr. Charles Hargon, Jr., the emergency room doctor who treated R.W., testified that R.W. complained that her stepfather had sexually assaulted her and that she appeared very upset. The photographs of R.W.'s injuries show visible wounds to her head, legs, arms and back. In particular, a photograph was introduced showing an open laceration to R.W.'s head. On arrival at LSU Medical Center, R.W. was very anxious and in considerable distress and had a heart rate of 104.
Dr. John Mercer, Jr., also of LSU Medical Center, testified that he performed the rape examination on R.W. During the examination, in addition to other cuts and bruises, Dr. Mercer also found a small laceration in her vagina and a large amount of a milky white substance containing sperm in her pubic hair and inside her vagina.
Michelle Gaines, a forensic biologist and DNA analyst at the North Louisiana Crime Laboratory in Shreveport, testified *259 that she conducted the DNA testing for this case. Ms. Gaines found seminal fluid present in R.W.'s sexual assault kit. The DNA analysis performed by Ms. Gaines excluded R.W.'s boyfriend as the donor of the sperm found on and in R.W., but did not exclude Defendant as the donor. In fact, Ms. Gaines testified that the likelihood that the sperm came from an African American male other than Defendant is one in 337 trillion. Ms. Gaines also performed DNA testing on the blood found on the hammer that was recovered at the scene. The testing showed that the blood came from a female, thereby excluding the possibility that it came from either Defendant or R.W.'s boyfriend. Ms. Gaines testified that the likelihood that the blood on the hammer came from an African American female other than R.W. was one in 25.7 quadrillion.
In his opening statement and final summation at trial, defense counsel agreed that the victim had been beaten and that he and the victim had sexual intercourse on the day of the charged crime. Interestingly, this admission is contrary to Defendant's original statement given to the police where he claimed to never have had sexual intercourse with R.W. Defendant now denies that he committed aggravated rape and asserts that the lesser crimes of aggravated battery and carnal knowledge of a juvenile were committed and that the evidence presented was insufficient for conviction of aggravated rape.

DISCUSSION
Defendant argues that he is protected by the Due Process Clause of the U.S. Constitution against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime of which he is charged. He submits that the evidence presented was insufficient to support the jury verdict of aggravated rape in violation of La. R.S. 14:42. In order for a defendant to be convicted of aggravated rape, the elements listed in the statute must be found.
The underlying elements of an aggravate rape charge, as applicable to this case, are found in La. R.S. 14:41 and La. R.S. 14:42. Rape is defined in La. R.S. 14:41 as follows:
The act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent, and any sexual penetration, however slight, is sufficient to complete the crime.
The offense of aggravated rape is defined in La. R.S. 14:42, which provides, in pertinent part, as follows:
A rape that is committed under any of the following circumstances: (1) The victim resisted to the utmost but the resistance was overcome by force; (2) the victim was prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution; (3) the victim was prevented from resisting because the offender was armed with a dangerous weapon; (4) the victim was under the age of 12; (5) two or more offenders participated in the act.
Defendant claims that, on the basis of the evidence and testimony, the State failed to prove the necessary elements beyond a reasonable doubt. He further claims that every reasonable hypothesis of innocence as to aggravated rape was not excluded.
The State argues that all elements of the crime of aggravated rape were proven beyond a reasonable doubt and the conviction and sentence imposed were proper. Further, the State contends that there is ample evidence within the victim's testimony, other witnesses corroborating the testimony *260 of the victim and photographs of injuries, as well as DNA evidence, to support the conviction. We agree.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier-of-fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness' testimony, if believed by the trier-of-fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 34,383 (La. App.2d Cir.2/28/01), 780 So.2d 1213; State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96 1459 (La.11/15/96), 682 So.2d 760.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. When the direct evidence is viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier-of-fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Robinson, supra; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
La.C.Cr.P. art. 821 provides "that a post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." This article manifests the intent to adopt the standard of Jackson as the proper degree of deference which both trial and appellate courts owe to the jury's verdict. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
When, as here, the appellate court is reviewing the evidence for sufficiency to convict, the court must accept the factfinder's credibility calls and inferences drawn from conflicting evidence, when those determinations are reasonably supported by the record. The court is not to second guess the factfinder's resolution of the factual conflicts, but to consider only whether the evidence deemed credible by the jury is legally sufficient to establish each essential element of the offense beyond a reasonable doubt. State v. Bosley, supra; State v. Taylor, 34,096 (La.App.2d Cir 12/15/00), 774 So.2d 379; State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925. According to R.W.'s testimony, Defendant repeatedly beat her with a hammer and raped her. R.W. stated that she did not consent to sexual intercourse with Defendant, which is the reason for her fighting and resisting throughout the attack.
The supreme court has held that the testimony of the victim and the investigating officer in a rape case is sufficient to *261 convince a reasonable factfinder beyond a reasonable doubt of a defendant's guilt. State v. Rives, 407 So.2d 1195 (La.1981). In the case sub judice, there was the testimony from the victim, two investigating police officers, an evidence technician, two doctors and a neighbor who witnessed the victim's disposition immediately following the attack. There was also various scientific evidence contained in a sex crime kit which was conducted by the North Louisiana Crime Laboratory. All of this evidence supports the conclusion that Defendant had sexual intercourse with R.W. and that R.W. resisted, but was overcome by force in the form of beatings with a dangerous weapon (the hammer).
The only evidence which contradicts R.W.'s testimony is found in Defendant's recorded statement to the police, wherein he claims that he never had sex with R.W. As previously stated, at trial and now on appeal, Defendant seems to suggest that the sexual intercourse between the two was not without R.W.'s consent. There is no evidence to suggest, however, that there was ever any type of consensual sexual relationship between Defendant and R.W. Moreover, the record indicates that there had been at least two prior incidents where Defendant had inappropriately touched R.W. in a sexual manner without R.W.'s consent. Finally, we find further evidence of the non-consensual encounter in the disheveled appearance of the home, as seen in photographs depicting the disarray of the rooms, including pots, pans and dishes that were knocked to the floor during the struggle.
Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Defendant was guilty of the crime of aggravated rape as defined by La. R.S. 14:42.

CONCLUSION
For the reasons stated herein, Defendant's, Ariedell Davis, conviction and sentence are affirmed.
AFFIRMED.