821 So.2d 633 (2002)
STATE of Louisiana, Appellee
v.
Elbert TAYLOR, Jr., Appellant.
No. 36,066-KA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 2002.
*635 Wilson Rambo, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Laura Wingate Lea Hall, Assistant District Attorneys, for Appellee.
Before NORRIS, CARAWAY and KOSTELKA, JJ.
NORRIS, Chief Judge.
The defendant, Elbert Taylor Jr., was indicted for the aggravated rape of his six-year-old niece, L.T. La. R.S. 14:42 A(4). A jury found him guilty as charged, and the District Court imposed the mandatory sentence of life at hard labor without benefit of probation, parole or suspension of sentence. Taylor now appeals, urging 10 assignments of error. We affirm.

Factual background
On Christmas morning 1999, the victim's mother, Stephanie, went to her mother's home on West 82nd Street in Shreveport. She brought along her two daughters, including six-year-old L.T. Many relatives were present, including the 39 year old defendant, who is Stephanie's brother and L.T.'s uncle. At some point, Stephanie left to pick up some other relatives. At the time, L.T. was playing in the yard with other children.
When Stephanie returned, L.T. was not in the yard, resulting in a search for the missing child. Stephanie found Taylor in a bathroom, taking a shower. Through the locked door, Taylor told Stephanie that L.T. had gone to a neighbor's house, but Stephanie knew this was untrue as she had already been there. Stephanie could see through a crack in the door that Taylor was clothed, but he still insisted he was taking a shower and refused to come out. According to Stephanie, he stayed in the bathroom for an hour or two, raising her suspicions.
When Taylor finally opened the door, Stephanie came in and started searching the bathroom. She found L.T. in the cabinet under the lavatory, hidden under dirty clothes. The child was clothed and apparently unharmed, but extremely upset. Believing that Taylor had done something to the child, Stephanie called 911. While on the phone, she scuffled with Taylor, who left the house. The police then arrived; L.T. told Officer Hunt that Taylor made her "kiss him in the penis area until he peed in her mouth." Officer Hunt then left and apprehended Taylor on the other side of a drainage ditch, walking away from the scene.
L.T. was taken to the LSU Medical Center Pediatric Clinic where she was examined by Dr. Atossa Stanley, a family practitioner. She found no cuts or bruises, but *636 saw that L.T.'s hymen was not intact. L.T. told Dr. Stanley that Taylor had called her into the bathroom; he put his "thing" in her mouth until he "peed white bleach"; he then told her to take off her clothes; he then put it in "down there," going "in and out." Dr. Stanley administered a rape kit test to L.T., and also took a statement from Stephanie.
While at the hospital, L.T. also gave a statement to Detective Van Wray. She said that after her mother left that morning, Taylor called her into the bathroom; he then told her to "suck on his dick until he pede [sic ]"; he then told her to take off her clothes, and "stuck his thing inside of her coochie"; this made her hurt; finally, when he heard Stephanie calling for her, Taylor stuck her in the cabinet.
Two days later, L.T. and her cousin, eight-year-old S.T., were taken to the Gingerbread House, a children's advocacy center. Janice Horton Reliford, a forensic interviewer, conducted videotaped interviews of both children following all protocols. She was explicit that while the interviews were being taped, nobody was present except the child and the interviewer; however, using an earpiece she could receive questions from Det. Van Wray, who was in a separate room with the girls' parents. In the interview, L.T. told Ms. Reliford that her uncle made her "suck his thing" and put "his thing in her coochie" until yellow stuff that "smelled like bleach" came out.
In a separate interview with Ms. Reliford, S.T. said Taylor had grabbed her by the shirt and pulled her into the bathroom; S.T. told him to leave her alone, but he locked her in while he took a shower. Later, he told her that he would marry her when she got older. Ms. Reliford testified that both of the videotapes appeared to be accurate and correct.
On January 4, 2000, L.T. returned to LSU Medical Center to be examined by Dr. Anne Springer, a pediatrician and the physician coordinator of the Child Abuse Diagnosis and Management Service. She did not take any statement, but examined L.T. with a colposcope, finding the child's hymenal opening "jagged and irregular" and scarring in the fossa navicularis. She concluded that something "too big to fit through the opening" had passed through it, tearing it and damaging the tissue; she described the action as "basically slamming into this tissue." She testified that it may have been a finger, but the evidence was not consistent with "straddle injuries," which would leave straight-line abrasions.
Connie Brown, a forensic DNA analyst at the North Louisiana Crime Lab, examined the rape kit, L.T.'s panties and clothing, and Taylor's clothing, together with oral samples taken from Taylor. She testified that one of the stains on L.T.'s panties, and her oral swab, tested positive for PSA, an antigen found only in seminal fluid. However, there was not enough spermatozoa on either sample to conduct DNA analysis.
As noted, the Caddo Parish grand jury indicted Taylor for aggravated rape, citing R.S. 14:42 A(4), based on the fact that L.T. was under the age of 12. The State filed notice of its intent to use other crimes evidence pursuant to La.C.Cr.P. art. 720 and La. C.E. art. 404 B, specifically that Taylor "had previous sexual contact and vaginal sexual intercourse with the juvenile victim L.T., and also has made inappropriate and lustful comments to juvenile victim S.T." The State also filed notice of its intent to use the videotapes of the minors at trial, pursuant to La. R.S. 15:440.1. After a hearing on April 3, 2001, the District Court ruled that the other crimes evidence and the videotapes were admissible.
*637 The case went to trial in August 2001. In addition to the evidence outlined above, L.T. testified that everything she said on the video was true, and that her uncle had done this to her "lots," at least three times. On cross examination, she agreed with defense counsel's suggestion that her mother was present in the room while the video was being made. Her cousin, S.T., testified that Taylor had told her he intended to marry her, but he had never touched or hurt her.
At the close of evidence, Taylor moved for mistrial on grounds that the video of S.T.'s interview did not satisfy La. C.E. art. 404 B, in that it failed to show any pattern or system of actions. This motion was denied. Taylor also moved that the statutory responsive verdicts of forcible rape and attempted forcible rape should be included as responsive verdicts. The court denied this motion, finding no evidence of force.
The jury found Taylor guilty as charged of aggravated rape. The vote was 11-1. Taylor filed a motion for post verdict judgment of acquittal, which was denied. The court sentenced him to the mandatory sentence of life at hard labor, without benefit of probation, parole or suspension of sentence. This appeal followed.

DiscussionSufficiency of the evidence
By his first and eighth assignments Taylor urges the evidence was legally insufficient to sustain his conviction. He urges that the only direct evidence was the testimony of L.T., which was tainted by suggestive questions; all the other evidence, chiefly the testimony of expert witnesses, was circumstantial, inconclusive and contradictory.
As it applies to this case, aggravated rape is defined as rape where the anal, oral or vaginal sexual intercourse is deemed to be without lawful consent of the victim because the victim is under the age of 12 years. Lack of knowledge of the victim's age is not a defense. La. R.S. 14:42 A(4).
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court first analyzes the sufficiency issue. This is because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied 97-1203 (La.10/17/93), 701 So.2d 1333. The standard of appellate review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra; La.C.Cr.P. art. 821. The Jackson standard applies to all evidence, both direct and circumstantial, to test whether it is sufficient to prove guilt beyond a reasonable doubt to a rational jury. State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649; State v. Owens, 30,903 (La. App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied 98-2723 (La.2/5/99), 737 So.2d 747.
The appellate court's authority to review questions of fact in a criminal case is limited to the sufficiency evaluation of Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2 Cir.1984). Within the bounds *638 of rationality, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022; State v. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Davis, 35,298 (La.App. 2 Cir. 12/5/01), 803 So.2d 256; State v. White, 28,095 (La.App. 2 Cir. 5/8/96), 674 So.2d 1018, writ denied 96-1459 (La.11/15/96), 682 So.2d 760. Evidence of flight, concealment, and attempt to avoid apprehension is relevant because it indicates consciousness of guilt and this is a circumstance from which the jury may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Wade, 33,121 (La.App. 2 Cir. 4/15/00), 758 So.2d 987, writ denied 00-2160 (La.9/28/01), 797 So.2d 684.
In her videotape, the L.T. clearly described how Taylor made her perform oral sex on him and then had sexual intercourse with her. She described numerous explicit acts that would not be otherwise known to a six-year-old child. This proves every essential element of the crime. La. R.S. 14:42 A(4). Despite Taylor's contention that her testimony was tainted by suggestive questions, we note that L.T. spontaneously related the same details to her mother right after the incident, and to Dr. Stanley and Det. Van Wray later the same day. The video interview was facilitated by Ms. Reliford, but was substantially the same. In short, we see no reason to reject the jury's decision to accept L.T.'s description of Taylor's conduct.
Moreover, the circumstantial evidence is far from inconclusive or inconsistent with L.T.'s testimony. This evidence includes the forensic finding of PSA on her panties and in her mouth; two expert physicians' findings of repeated vaginal penetrations; and Taylor's own conduct in initially denying that L.T. was in the bathroom and later trying to evade the officer. This evidence totally corroborates L.T.'s description of Taylor's conduct. Viewed in the light most favorable to the State, the evidence supports a finding, beyond a reasonable doubt, that Taylor committed an aggravated rape of L.T. These assignments of error lack merit.

Admissibility of L.T.'s videotape
By his second, third and fourth assignments Taylor urges the District Court erred in admitting the videotape of L.T.'s interview. He specifically contends that L.T.'s mother, Stephanie, was present in the room while the interview was conducted, in violation of R.S. 15:440.4 A(2), and that the interview was tainted by "four separate interviews" before Ms. Reliford videotaped her at the Gingerbread House. He also contends that trial counsel was ineffective for failing to seek a mistrial when the District Court admitted the videotape into evidence.[1]
A videotape of a child 14 years of age or under may be offered in evidence either for or against a defendant charged with the rape or physical or sexual abuse of a child. La. R.S. 15:440.4 A. To render the tape competent evidence, the party offering it must satisfactorily prove:
"(1) That such electronic recording was voluntarily made by the victim of the physical or sexual abuse.
"(2) That no relative of the victim of the physical or sexual abuse was present in the room where the recording was made.

*639 "(3) That such recording was not made of answers to interrogatories calculated to lead the child to make any particular statement.
"(4) That the recording is accurate, has not been altered, and reflects what the witness or victim said.
"(5) That the taking of the child's statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a licensed professional counselor, or an authorized representative of the Department of Social Services." Id.

The presence of a relative in the room where the interview is being conducted renders the videotape inadmissible. State v. Bennett, 591 So.2d 1193 (La.App. 1 Cir.1991), writ denied 594 So.2d 1315 (La.1992).[2]
The District Court has great discretion in ruling on pretrial matters. Unless contrary to law, the court's rulings will not disturbed absent a clear showing of abuse of discretion. See, e.g., State v. Prudholm, 446 So.2d 729 (La.1984); State v. Huff, 27,212 (La.App. 2 Cir. 8/23/95), 660 So.2d 529, writ denied 96-0212 (La.5/1/97), 693 So.2d 754.
As noted, L.T.'s videotaped interview was conducted at the Gingerbread House, a child abuse support facility in Shreveport, by Ms. Reliford, a forensic examiner with a B.S. in psychology and an M.S. in family therapy. Ms. Reliford testified at the pretrial hearing that only she and L.T. were in the room when the interview was taped. The tape itself corroborates this: nobody else is seen in the video portion, no other voices are heard on the audio, and the participants make no gestures or references to anybody else in the room. Ms. Reliford testified that Det. Van Wray and L.T.'s mother, Stephanie, were in the building, but in another room. The detective corroborated this. Taylor objected on grounds that R.S. 15:440.1 is unconstitutional and that the tape was hearsay; the District Court ruled that the tape was admissible, noting Taylor's objection. R.pp. 129, 132.
At trial, Taylor did not object to the introduction of L.T.'s videotape into evidence. R.p. 207. As such, the issue is technically not before us. However, because Taylor objected at the pretrial hearing and because the record is complete, we will address the argument briefly.
Taylor argues that trial evidence undermined the court's pretrial decision to admit the L.T.'s videotape. Specifically, he cites L.T.'s testimony on cross examination. Defense counsel asked her, "And when you were making that video, was she [Stephanie] in that same room, the same room?" L.T. replied, "Yes, sir." Defense counsel reiterated, "She was in the same room. We don't ever see her on the video, but she was there?" Again, L.T. replied, "Yes, sir." He argues that the matter of who was in the room is easy to recollect; thus court should have accepted L.T.'s statements instead of the testimony of "the professionals." He further suggests that Ms. Reliford and Det. Van Wray "were either in error in their recollection or intentionally misrepresented the situation * * * to secure the videotape's admission into evidence." Br., 16.
We perceive no error. The District Court saw and heard each of the witnesses, thus placing it in the superior position *640 to accept Ms. Reliford and Det. Van Wray's version of the interview, which is corroborated by the tape itself. L.T.'s remarks to the contrary were nothing more than assent to somewhat suggestive questions. There is nothing in this record to support Taylor's claim of intentional misrepresentation.
Finally, Taylor argues that by the time L.T. made the videotape on December 27, she had already been exposed to "suggestive interviews" by her mother, Officer Hunt, Dr. Stanley, and Det. Van Wray. However, we have closely reviewed these witnesses' testimony. Each stated that he or she questioned L.T.; there is no evidence that any of them tainted or influenced her account of the incident. This argument lacks merit.
Even if the issue were properly preserved, we would find no error in the admission of L.T.'s videotape into evidence at trial, under R.S. 15:440.4. We pretermit any consideration of Taylor's claim that counsel was ineffective for failing to object to the admission of the tape.

Admission of S.T.'s videotape
By his fourth and fifth assignments Taylor urges the District Court erred in failing to grant a mistrial on grounds that S.T.'s videotape did not meet the requirements of La. C.E. art. 404 B. He correctly argues that evidence of prior bad acts is generally inadmissible under art. 404 B. He specifically argues that State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916, has greatly limited the admissibility of "lustful disposition" evidence to prior conduct involving the complaining witness, or to cases where it is relevant to prove specific intent, identity or plan. He further urges that S.T. testified inconsistently with her videotaped interview, thus making the latter inadmissible hearsay.
The claim that S.T.'s videotape was inadmissible hearsay lacks merit. A videotape authorized by R.S. 15:440.1 et seq. is admissible in evidence as an exception to the hearsay rule. R.S. 15:440.3; State in Interest of R.C., 514 So.2d 759 (La.App. 2 Cir.), writ denied 516 So.2d 128 (La.1987).
Turning to Taylor's other argument, we note that since the rendition of State v. Kennedy, supra, the legislature has responded by enacting La. C.E. art. 412.2, which provides in pertinent part:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on the matter to which it is relevant subject to the balancing test provided in Article 403.
This article, which clearly makes S.T.'s videotape admissible, took effect on August 15, 2001, two days into the instant trial. Arguably, art. 412.2 applies to this trial since it does not redefine criminal conduct or increase the punishment for criminal conduct. State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735, cert. denied 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001). However, we decline to address the question of retroactivity because we find that the contested evidence satisfies art. 404 B.
For evidence of other crimes to be admissible, at least one of the enumerated purposes in art. 404 B must be at issue, have some independent relevance, or be an element of the crime charged. State v. Kennedy, supra; State v. Jackson, 625 So.2d 146 (La.1993). In State v. Zornes, 34,070 (La.App. 2 Cir. 4/3/02), 814 So.2d 113, this court approved the use of the defendant's prior bad acts involving the *641 victim's older half-sister to prove intent or plan:
Defendant's sexually assaultive behavior on the victim's half-sister was virtually identical [to that inflicted on the complaining witness]. This improper sexual conduct was carried out in the same manner, place and time as the charged offense. In both cases, the young children were in defendant's home and in his custody. Although the criminal conduct involving the older half-sister started earlier than the behavior in the charged offense, it continued to occur during the same time frame. The similarities warrant admissibility to show the occurrence of a crime through a common design.
S.T.'s videotape established that Taylor grabbed her by the shirt and pulled her into the bathroom; S.T. told him to leave her alone, but he still locked her in while he took a shower, and later told her that he would marry her when she got older. This is strikingly similar to L.T.'s testimony that Taylor called her into the bathroom, made her engage in sexual acts with him, then kept her in the bathroom while he took a shower. Notably, Dr. Springer testified that molesters of small children often "groom" their victims by gradually leading them into sexual contact. This is consistent with Taylor's "promise" to marry S.T. when she got older. In short, this evidence is sufficient and relevant to show Taylor's design or plan in abusing his young nieces. State v. Kennedy, supra; State v. Zornes, supra.
Moreover, assuming arguendo that the admission of S.T.'s video was error, it is subject to harmless error analysis. State v. Maise, 00-1158 (La.1/15/02), 805 So.2d 1141; State v. Zornes, supra (concurrence of Caraway, J.). The victim's graphic description of Taylor's conduct, together with the circumstantial evidence which we have already discussed in extenso, was so conclusive that the admission of S.T.'s videotaped interview could not have affected the verdict. These assignments lack merit.

Responsive verdicts
By his sixth and seventh assignments Taylor urges the District Court erred in excluding, pursuant to the State's motion, the responsive verdicts of forcible rape and attempted forcible rape. In support, he cites La.C.Cr.P. art. 814 A(8),[3] listing the responsive verdicts for aggravated rape, and art. 814 C, allowing the trial court to exclude a responsive verdict only when it is not sufficiently supported by the facts to reasonably permit a finding of guilt of that responsive offense. He contends that there was sufficient evidence of force, notably L.T.'s testimony that she was forced under the sink, and Dr. Springer's testimony that breaking L.T.'s hymen entailed great force and pain.
The "force" element of forcible rape, R.S. 14:42.1 A, means there was no lawful consent because one or more of these circumstances was present:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other *642 controlled dangerous substance administered by the offender and without the knowledge of the victim.
The instant charge is based on R.S. 14:42 A(4), in that the victim was under the age of 12. This form of aggravated rape is presumed to be without the lawful consent of the victim; force is not an element of rape of a child under the age of 12. State v. Folden, 135 La. 791, 66 So. 223 (1914). While some force or strength is inherent in the act of rape, the force contemplated by R.S. 14:42.1 is that which coerces the victim's consent and prevents his or her resistance. When such evidence is not present, the trial judge should not instruct the jury as to forcible rape or include it as a responsive verdict. State v. Henry, 449 So.2d 486 (La.1984); State v. Harris, 627 So.2d 788 (La.App. 2 Cir.1993), writ denied 93-3188 (La.3/18/94), 634 So.2d 851. The instant record contains no evidence that Taylor used threats of physical violence or drugged L.T. into submission. He may have forced her into the cabinet under the sink, but this was after the rape occurred. We perceive no error in excluding forcible rape and attempted forcible rape from the responsive verdicts.

Excessive sentence
By his ninth and tenth assignments Taylor urges the District Court erred in imposing an excessive sentence. He argues that even the statutory mandatory sentence may violate La. Const. Art. 1, § 20's protection against cruel, unusual or excessive punishment. State v. Dorthey, 623 So.2d 1276 (La.1993). He also contends that the court's failure to articulate a factual basis for sentence, La.C.Cr.P. art. 894.1, mandates reversal of his sentence and remand for resentencing.
Taylor did not file a motion to reconsider sentence. He is therefore relegated to a claim of bare excessiveness. La.C.Cr.P. art. 881.1; State v. Mims, 619 So.2d 1059 (La.1993).
When the State does not seek a capital verdict, aggravated rape of a child under the age of 12 carries a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:42 D(2)(b). The courts have repeatedly held that this mandatory sentence is constitutional. State v. Foley, 456 So.2d 979 (La. 1984); State v. Ingram, 29,172 (La.App. 2 Cir. 1/24/97), 688 So.2d 657, writ denied 97-0566 (La.9/5/97), 700 So.2d 505. In brief, Taylor expounds general principles of the law of excessiveness, but does not clearly and convincingly show that he is exceptional or that because of unusual circumstances he is the victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. On the evidence presented, this mandatory life sentence does not shock our sense of justice. State v. Dorthey, supra. These assignments lack merit.

Conclusion
For the reasons expressed, Elbert Taylor's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Taylor moved for a mistrial on grounds that the tape of S.T. (not L.T.) was inadmissible. R.p. 297. This issue is directly addressed by his fifth assignment of error.
[2] The admissibility of the videotape is subject to the additional requirements of R.S. 15:440.5, which partly overlap those of § 440.4. State v. Ledet, 96-0142 (La.App. 1 Cir. 11/8/96), 694 So.2d 336, writ denied 96-3029 (La.9/19/97), 701 So.2d 163. However, Taylor does not allege any violation of R.S. 15:440.5.
[3] These are guilty, guilty of attempted aggravated rape, guilty of forcible rape, guilty of attempted forcible rape, guilty of sexual battery, guilty of simple rape, guilty of attempted simple rape, and not guilty.