828 So.2d 631 (2002)
STATE of Louisiana, Appellee
v.
Leonard B. STOKES, Appellant.
No. 36,212-KA.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
*633 Louisiana Appellate Project, by J. Wilson Rambo, Monroe, for Appellant.
Richard Ieyoub, Attorney General, for Appellee.
Jerry L. Jones, District Attorney, Geary S. Aycock, Assistant District Attorney.
Before WILLIAMS, STEWART and HARRISON (Pro Tempore), JJ.
STEWART, J.
The defendant, Leonard Stokes, was convicted of aggravated rape, and sentenced to life imprisonment, without benefit of probation, parole or suspension of sentence, from which he now appeals. Based on the following, we affirm the defendant's conviction and sentence.

*634 FACTS
On August 7, 1999, M.C. was 16 years old, and living with her mother in West Monroe. At sometime between 7:00 p.m. and 8:00 p.m., M.C. was followed by the 24 year old defendant while she was walking home. The defendant was riding a bicycle at the time. The defendant asked the M.C. if she would be his "girlfriend." M.C. rejected his advances. M.C. then entered her home, and tried to lock the defendant out, but the lock was broken. Her mother was not at home, and they did not have a phone, so she could call anyone for help. The defendant followed M.C. into her home. Frightened, M.C. demanded that the defendant leave the house. After he refused, M.C. left her home and walked to her brother's home. No one was at her brother's home, so she waited until she thought it was safe to return to her own home. M.C. returned to her home and thought she had locked the door.
As she was sitting on the couch in her living room, she realized that the defendant was standing over her. The defendant refused to leave, and demanded sex. She refused, and began screaming for help. The defendant began wrestling with, hitting, and choking M.C. He told her that he would kill her if she refused. The defendant next pulled M.C.'s jeans and panties down, then pulled his pants down. Next, as testified to by M.C., the defendant first put his finger, then his penis into her vagina. The defendant had forced intercourse with her for about five minutes. M.C. did not think that the defendant used a condom, and did not think that the defendant ejaculated into her.
Afterwards, the defendant pulled his pants up and fled the home. Once the defendant had left, she put her clothes back on and fled to a neighbor's house, where the police were called around 8:10 p.m.
When questioned by the police, M.C. told them that she did not know her assailant, but knew that he lived in the neighborhood. She did not know him by name, but by his street name of "Red." Neighborhood children at the scene told Officer Rodderick Banks that the "Red" he was looking for lived nearby. This was the home of Lennie Biggs, the defendant's father.
Officer Banks, went to investigate and talked to Lennie Biggs, and Roxie Jefferson, the defendant's girlfriend. At trial, the officer testified that the two told him that no "Red" lived at the home. The officer did not pursue the lead any further, and did not write a report on the matter. At trial, Lennie Biggs and Roxie Jefferson, the defendant's girlfriend, both testified that the officer asked if a "Rodney Jefferson" lived there, and they told him no. They further testified that the defendant was in the house, but did not come out of his bedroom while the officer was at the front door. They also testified that they had never heard of the defendant being called "Red."
Both Lennie Biggs and Roxie Jefferson were alibi witnesses for the defendant. Both testified that the defendant was home during the time of the rape. Roxie Jefferson testified that the defendant was home when she came to visit around 6:30 p.m., and they left only to see a movie.
The police took M.C. to E.A. Conway Hospital, where a rape kit examination was performed by Dr. Antonio Pizarro. Dr. Pizarro testified that his examination revealed M.C. to be bleeding from first degree, or superficial, tears on the left and right inside walls of her vagina. Dr. Pizarro testified this injury was consistent with forcible penetration. Dr. Pizarro, performed a chemical cauterization to prevent further bleeding. Dr. Pizarro did not find any other injuries to M.C. Next, M.C. *635 related the same story to the doctor that she told the police, that a man named "Red" came into her house and had forced intercourse with her. The doctor described M.C. as being upset. The "rape kit" evidence obtained by Dr. Pizarro was sent to the North Louisiana Crime Lab for testing.
Detective Jerry Ellerman testified that on August 10, 1999, he went to M.C. with a six-person photographic lineup. The lineup was created by the A.F.I.S. system, and contained a photograph of the defendant and five other men similar in appearance. Both officers testified that M.C. immediately picked out the defendant as the one who had raped her. Based on her identification, an arrest warrant was issued for the defendant. The police then learned that the defendant was in Chicago. Quite some time later, the defendant was arrested in Chicago. He waived extradition, and was returned to Louisiana.
Linda Armstrong, with the North Louisiana Crime Lab, testified that she tested the evidence in the "rape kit." She found no DNA on M.C.'s clothing or the vaginal swabs, other than M.C.'s. She did find traces of P.S.A., or prostate specific antigens, on the crotch area of M.C.'s blue jeans.[1] Ms. Armstrong testified that the only source for P.S.A. was from semen. The P.S.A. sample did not contain enough material to obtain a DNA sample.
On May 30, 2000, the grand jury issued an indictment of aggravated rape, pursuant to La. R.S. 14:42A(4). After the defendant pled not guilty, his counsel filed two motions to quash the indictment. The first motion asserted that the statute listed in the indictment referred to rape of a child under the age of 12 years old, and the M.C. was actually 16 years old at the time of the incident. The second asserted that the indictment was invalid because of systemic discrimination against African-Americans in the selection of the grand jury foreman in Ouachita Parish.
On December 11, 2000, the state filed an "Amended Bill of Information" correcting M.C.'s birth date, and indicting the defendant for aggravated rape, "contrary to the provisions of R.S. 14:42(A)(1) or (2)." The defendant pled not guilty on the same date. Also on December 11, 2000, the defendant filed a "Motion to Suppress the Photographic Lineup," alleging that the lineup was not fair and objective, and that it was unduly suggestive.
A hearing on the motions to quash and suppress was held on July 24, 2001. There was also a hearing to determine whether the defendant would submit to a blood test for DNA purposes.[2] As to the motions to quash, the defendant voluntarily dismissed both since an amended indictment had been filed, correcting the typographical errors, and the new indictment was by a new grand jury with a foreman selected by random selection pursuant to the 1999 amendment to La.C.Cr.P. art. 413. The defendant also agreed to allow a blood sample to be taken for DNA testing purposes.
Testimony was taken on the motion to suppress the photographic lineup. Detective Jerry Ellerman testified that after he had initially interviewed the victim, he developed the name of the defendant as a suspect. This apparently resulted from members of the neighborhood surrounding the defendant's home. After receiving the name, Detective Ellerman put together a *636 six-photo lineup and included a photograph of the defendant. The selection of the other five photographs was by a computer system that matched photos by known facial characteristics. Detective Ellerman testified that when shown the photographic lineup, M.C. immediately pointed to the defendant's photograph, and never expressed any uncertainty that he was the man that raped her. Detective Ellerman further testified that no suggestions were made to M.C. to result in her identification of the defendant. The trial court denied the defendant's motion to suppress. The defendant was also ordered to submit to blood testing for DNA purposes.
Trial was held on August 7, 2001 to August 9, 2001, with the witnesses testifying as stated above. At the close of the evidence, the defendant filed a motion to quash the amended indictment on the grounds that the state had failed to disclose three pieces of favorable evidence to the defendant prior to trial. The first was that the state failed to disclose "the North Louisiana Crime Lab Report of December 20, 1999, and the defendant did not find out about said report until during the trial on the merits." This report was of the testing of a vaginal swab taken from M.C. on the night of the rape. The report stated that "spermatozoa and prostate-specific antigen could not be detected."
The second piece of evidence was an "initial police report wherein patrolman Rodderick Banks went to the residence of defendant shortly after the alleged rape." The evidence indicated that no report was ever made. The third piece of evidence was "documents showing the alleged victim went to E.A. conway [sic] hospital the day after the alleged incident." The trial court denied the motion to quash as untimely filed.
The jury found the defendant guilty of aggravated rape. The defendant was sentenced to life imprisonment, without benefit of probation, parole or suspension of sentence.

DISCUSSION
Sufficiency of the Evidence
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court first analyzes the sufficiency issue. This is because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied 97-1203 (La 10/17/93), 701 So.2d 1333. The standard of appellate review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. La.C.Cr.P. art. 821; Jackson v. Virginia, supra. The Jackson standard applies to all evidence, both direct and circumstantial, to test whether it is sufficient to prove guilt beyond a reasonable doubt to a rational jury. State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
The appellate court's authority to review questions of fact in a criminal case is limited to the sufficiency evaluation of Jackson v. Virginia, supra, and does not extend to credibility determinations made *637 by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). Within the bounds of rationality, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022; State v. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Davis, 35,298 (La.App.2d Cir.12/5/01), 803 So.2d 256; State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760. Evidence of flight, concealment, and attempt to avoid apprehension is relevant because it indicates consciousness of guilt and this is a circumstance from which the jury may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Wade, 33,121 (La.App.2d Cir.4/15/00), 758 So.2d 987, writ denied, 00-2160 (La.9/28/01), 797 So.2d 684.
La. R.S. 14:41 defines rape:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
La. R.S. 14:42A provides, in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
In this assignment of error, the defendant argues the evidence was legally insufficient to sustain his conviction. He urges that the only direct evidence was the testimony of M.C., and that all the other evidence, chiefly the testimony of expert witnesses, was circumstantial, inconclusive and contradictory. The defendant also points out that the scientific evidence does not identify him as the perpetrator.
In her trial testimony, M.C. clearly described how the defendant entered into her home and forced her to have intercourse. She described how she screamed for help and resisted, but the defendant choked her, and threatened her with death. Her description of the act being forced and very painful is supported by the medical evidence of her subsequent injuries. The medical evidence supports the victim's testimony about being raped. M.C. was positive in her identification of the defendant as the person who raped her. The defendant lived only a few blocks from the victim, and although she did not know him by name, she recognized him as someone who lived in the neighborhood. Moreover, the circumstantial evidence is far from inconclusive or contradictory. The medical evidence supports forcible penetration. The finding of prostate-specific antigen on the crotch of M.C.'s jeans supports sexual contact.
The defendant presented his father and girlfriend as alibi witnesses. Both testified that the defendant was home at the time of the rape. It is clear the jury chose not to believe the alibi witnesses. Viewed in a light most favorable to the state, and using the standard for appellate review set forth in Jackson v. Virginia, supra, the *638 jury could easily have found beyond a reasonable doubt each fact necessary for conviction of the defendant of the aggravated rape of M.C. Therefore, this assignment is without merit.
Motion to Quash
Suppression by the prosecution of evidence favorable to an accused upon his request for such evidence, violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Barker, 628 So.2d 168 (La.App. 2d Cir. 1993), writ denied, 93-3194 (La.3/25/94), 635 So.2d 236.
There are two sets of motions to quash. The first set, filed pretrial, asserted errors in the indictment and in the selection of the grand jury foreman. These motions to quash were voluntarily dismissed by the defendant and are not at issue in this appeal.
The second motion to quash was filed after the state had completed its case at trial. It asserted that the indictment should have been quashed because of the state's failure to timely produce evidence favorable to the defendant. The trial court found the motion, as a motion to quash, to be untimely, but further reviewed the merits of the claims. The two pieces of evidence addressed in this appeal are a December 20, 1999 Northwest Louisiana Crime Lab report, and an initial police report of Officer Rodderick Banks going to the defendant's home shortly after the rape.
The trial court was correct in finding that as a motion to quash it was untimely filed. The proper motion would have been a motion for new trial. See State v. Richardson, 35,450 (La.App.2d Cir.2/27/02), 811 So.2d 154. The state's failure to timely provide exculpatory evidence can be prejudicial conduct allowing for a new trial. La.C.Cr.P. art. 775 provides in part for a mistrial when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Richardson, supra; State v. Adams, 30,815 (La. App.2d Cir.6/24/98), 715 So.2d 118, writ denied, 98-2031 (La.3/19/99), 739 So.2d 774; State v. Hattaway, 28,060 (La.App.2d Cir.5/8/96), 674 So.2d 380, writ denied, 96-1900 (La.1/10/97), 685 So.2d 141. The decision to grant or to deny a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. State v. Richardson, supra; State v. Adams, supra; State v. Hattaway, supra.
The record indicates there were two reports from the crime lab. The first report, at dispute in this assignment, was dated December 20, 1999, and has only one finding:
Spermatozoa and prostate-specific antigen could not be detected on the vaginal swab (item 1C-1).
The second report, dated August 3, 2001, is a more detailed report, and was introduced into evidence, without objection, as State's exhibit D-6. It appears from the record that some of the delay in the completion of this report was due to the delay in obtaining a blood sample from the defendant. On page 2 of this report is the following language:
Spermatozoa and prostate-specific antigen (PSA) could not be identified on the vaginal swabs in item 1C-1 or on the panties in item 2(T1).
The trial court was correct in finding that the information in the "untimely" D-5 was contained in the timely produced D-6. The defendant does not indicate how he *639 was prejudiced by the asserted failure to timely produce exhibit D-5 until the trial. The record indicates that the defendant's counsel extensively cross-examined the crime lab witness about the facts that no spermatozoa was found on any of the evidence, that PSA was found only on M.C.'s jeans, and that no DNA of the defendant's was found on any of the evidence.
The second piece of evidence was the lack of a report by Officer Banks about his initial visit to the defendant's home shortly after the rape was reported. The officer was called as a defense witness. He testified that he was told by neighbors where "Red" lived. The officer went to the house and asked an elderly man and a young lady in the home if a "Red" lived there. Both said no, and the officer left. The officer identified the elderly man in court as Lennie Biggs, and the lady as Roxie Jefferson.
The defendant was not prejudiced by not having a report of Officer Banks' visit to the home until the trial began. Even if the motion to quash was considered as a motion for mistrial, the record does not reveal that the trial court erred in failing to grant the motion. The defendant failed to prove that he suffered such a substantial prejudice that he was deprived of any reasonable expectation of a fair trial. State v. Adams, 715 So.2d at 121; State v. Hattaway, supra. The trial court did not abuse its much discretion in denying the motion. This assignment is therefore without merit.
Motion to Suppress Photographic Lineup
In this assignment the defendant argues that the photographic lineup was so unduly suggestive and conducive to mistaken identification that he was denied due process of law. In seeking to suppress an identification, the defendant must prove the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification. State v. Martin, 595 So.2d 592 (La.1992); State v. West, 561 So.2d 808 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990). The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12. The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the victim's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.
A lineup is unduly suggestive if the procedure used focuses attention on the defendant. For example, distinguishing marks on the photos may single out the accused, or suggestiveness can arise if sufficient resemblance of physical characteristics and features does not reasonably test identification. State v. Tucker, 591 So.2d 1208, 1213 (La.App. 2d Cir.1991), writ denied, 594 So.2d 1317 (La.1992), citing State v. Robinson, 386 So.2d 1374 (La. 1980).
Photographs used in a lineup are suggestive if they display the defendant so singularly that the witness's attention is unduly focused on the defendant. State v. Smith, 430 So.2d 31 (La.1983); State v. Tucker, supra. It is not required that each person whose photograph is used in the lineup have the exact physical characteristics as the defendant. What is required is a sufficient resemblance to reasonably test the identification. State v. Smith, supra; State v. Davis, supra.
*640 Even if suggestiveness is proven by the defendant, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process. State v. Williams, 375 So.2d 364 (La.1979); State v. Davis, supra.
In this case, the detective testified that the defendant's photograph was placed with five other photographs of men that were similar in appearance. There is no testimony that the defendant's picture in any way stood out from the other pictures. The officer testified that M.C. immediately picked out the defendant's photo as the man who had raped her. M.C. testified that she knew the defendant as living in the neighborhood and recognized his photograph in the lineup. This assignment is therefore without merit.
Excessive Sentence/Motion to Reconsider Sentence
La. R.S. 14:42(D), provides:
D. (1) Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
In these assignments of error the defendant argues that the mandatory life sentence is constitutionally excessive, and the statutory mandate of La. R.S. 14:42 must yield to the constitutional prohibition of imposing excessive sentences.
It is the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies, and the courts are charged with applying those punishments unless they are found to be unconstitutional. State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503. The decision to assess mandatory life sentences for certain felonies is within the prerogative of the legislature. Id. The assertion that the mandatory life sentence for aggravated rape is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. State v. Ingram, 29,172 (La.App.2d Cir.1/24/97), 688 So.2d 657, writ denied 97-0566 (La.9/5/97), 700 So.2d 505.
The evidence presented shows that the defendant entered M.C.'s home, choked her to prevent her from screaming for help, and threatened her life to prevent her from further resisting. He pulled off her clothes, then raped her with such force as to result in medical injuries. As pointed out by the trial court at sentencing, the physical and mental trauma to M.C. was so much that she and her family moved out of the state. On the evidence presented, it is apparent that this mandatory life sentence does not shock a sense of justice. State v. Dorthey, 623 So.2d 1276 (La. 1993). These assignments lack merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
NOTES
[1] The PSA test was not done on the M.C.'s panties because of improper storage and preservation of the panties.
[2] The transcript of the hearing indicates that the defendant had been refusing to submit to a blood test.