743 So.2d 883 (1999)
STATE of Louisiana, Appellee,
v.
James Tildon HARRISON, Sr., Appellant.
No. 32,643-KA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
*884 Adkins & Tatum by T.J. Adkins, Ruston, Counsel for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, A. Scott Killen, Asst. Dist. Atty., Counsel for Appellee.
Before STEWART, PEATROSS, KOSTELKA, JJ.
KOSTELKA, J.
A jury convicted James Tildon Harrison, Sr. ("Harrison"), as charged, with distribution of cocaine, La. R.S. 40:967.[1] After his *885 subsequent adjudication as a third felony habitual offender, La. R.S. 15:529.1, the trial judge sentenced him to life imprisonment without benefit of parole, probation or suspension of sentence. Harrison now appeals, urging eight assignments of error. We affirm the conviction, vacate the enhanced sentence and remand to the trial court for resentencing in accordance with this opinion.

FACTS
On September 11, 1997, Detective Harmon Winters ("Winters") of the Natchitoches City Police Department and Deputy Greg Dunn ("Dunn") of the Natchitoches Parish Sheriffs Office were working in an undercover capacity with the Lincoln Parish Third Judicial Narcotics Enforcement Team. On that date, Winters and Dunn attempted to purchase crack cocaine from Gwen Hardyway ("Hardyway"). After Hardyway informed the officers that she did not have any crack cocaine, she got into the undercover vehicle with the officers and directed them to Harrison's residence. Upon arrival at the defendant's residence, Hardyway arranged an illegal narcotics transaction between Harrison and the officers. Winters then entered Harrison's residence and asked him for $50.00 worth of crack cocaine. Harrison weighed the crack cocaine and gave it to Winters who handed Harrison $50.00. Harrison was arrested by the Narcotics Enforcement Team on October 3, 1997.
Winters later identified Harrison from a photo line-up and in court as the person who sold him the crack cocaine at issue. The certified crime lab report established that the suspected rock of crack cocaine purchased from Harrison did in fact contain cocaine. The rock of crack cocaine weighed 1.4 grams.

DISCUSSION
Harrison has first raised three claims relating to the systematic exclusion of African American jurors in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The Batson holding is codified in our law as La.C.Cr.P. art. 795(C) which provides:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or the defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
To make a Batson claim against the state, the defendant must first establish a prima facie case that the state exercised its peremptory challenges to exclude members of the jury venire solely on the basis of their cognizable race. Batson, supra; State v. Green, 94-0887 (La.05/22/95), 655 So.2d 272. The state need not give an explanation for its use of a peremptory challenge if the trial court does not find that the defense has made a prima facie case, but many trial courts do so in order to create a complete record. State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992).
Once the defendant establishes a prima facie case, the burden then shifts to the state to come forward with a race-neutral explanation. This second step of the process does not demand an explanation from the state that is persuasive, or even plausible. The reason offered by the state will be deemed race-neutral unless a discriminatory intent is inherent within that explanation. The persuasiveness of the state's explanation only becomes relevant at the *886 third and final step which is when the trial court must decide whether the defendant has proved purposeful discrimination. Thus, the ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
In Harrison's first and second assignments of error, he contends that the trial court erroneously failed to recognize that he had established a prima facie case prior to the state's exercise of its seventh and eighth peremptory challenges and that the court erred when it did not require the state to provide race-neutral reasons for peremptorily striking all of the African American venirepersons previously excused. The defendant further argues that the trial court failed to make a specific finding on each challenge as required by La.C.Cr.P. art. 795.

Prima Facie Case/Race-Neutral Reasons
The subject peremptory challenges include: (1) Roy L. Jackson, an African American who testified that he knew Harrison and all of the attorneys involved in this matter; (2) Albert Murphy, an African American who testified that he had known Harrison for twenty years and was a friend of his family; that he worked on jobs with Harrison; that he and Harrison's brother do a lot of work for Harrison; and, that Harrison and his family buy carpet from him. The last job they worked on together was a year prior to his testimony. He saw the defendant on a regular basis and testified that he would feel uncomfortable seeing Harrison's family if he were to sit on the jury; (3) Michael Anderson, an African American who knew Harrison because he went to high school with one of his sons. Anderson, who was not a close personal friend of Harrison's son, did not think that he would be uncomfortable sitting on the jury; (4) Barbara Torbor, an African American who testified that she had known defendant for thirty to thirty-five years. Torbor's husband and Harrison were classmates; she socialized with Harrison at reunions and similar events; and, Harrison had been to her home three or four times for "social reunions." Torbor further testified that she had taught all of Harrison's children and knew his family. Torbor testified that a couple of her nephews were incarcerated, including one for a drug offense, and that she would rather not serve as a juror because she does not like the idea of having to judge another due to her personal beliefs; (5) Brenda Robinson, an African American who testified that Harrison was her second cousin; she knew Harrison's brother and sister; her first cousin had been arrested or convicted of misdemeanor DWI and she had previously served on a jury in a drug case which found the defendant not guilty; (6) Michael Stringfellow, Sr., an African American who testified that he had known Harrison all of his life. Harrison lived across the street from Stringfellow's aunt and he described Harrison as an acquaintance. Stringfellow testified that his brother was arrested or convicted of possession of marijuana and that he had sympathy for drug users but realized that they made a choice.
The state exercised its seventh peremptory challenge against Claude Bedford, an African American who testified that he had known Harrison for ten to fifteen years and that he knew the defendant's family. The state's eighth peremptory challenge was of Leonard Ventress who testified that the defendant worked for him in his construction business for an overall period of about a year.
Upon objection by Harrison after the state's challenge of Ventress, the trial court required the state to provide a race-neutral reason for the exercise of the seventh peremptory challenge directed against Claude Bedford only. For purposes of clarification, the court required the state to present a race-neutral reason and then accepted the state's explanation *887 that Bedford had known Harrison for ten to fifteen years.
Harrison argues that the trial court erred in failing to find that he had established a prima facie case with the first six jurors and in not requiring the state to provide a race-neutral reason for peremptorily striking all of the African American venirepersons previously excused.
We find no merit to either of these contentions. The court shall allow each peremptory challenge exercised for a racially neutral reason apparent from the examination to stand. La.C.Cr.P. art. 795(C),(D). Knowledge of the defendant is a sufficient race-neutral reason for a peremptory challenge of a prospective juror. State v. Jackson, 29,470 (La.App.2d Cir.08/20/97), 707 So.2d 990; State v. Hampton, 27,703 (La.App.2d Cir.02/28/96), 670 So.2d 1349, writ denied, 96-1063 (La.11/15/96), 682 So.2d 758. Jurors with family members who have criminal records may also be peremptorily challenged. State v. Mamon, 26,337 (La.App.2d Cir.12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.06/02/95), 654 So.2d 1104. Accordingly, the record (apparent) voir dire testimony showing that each of the first six jurors knew or were related to Harrison or had family members with criminal records eliminated the necessity for the trial court to demand a separate specific race-neutral reason for each of the six jurors and demonstrated insufficient support for an inference of discriminatory intent adequate to make out a prima facie case. La.C.Cr.P. art. 795(C).[2]

Peremptory Challenges of Riley and Wiley
In the third portion of Harrison's Batson claim, he contends that the state's use of peremptory challenges against Bill Riley and Dorothy Wiley clearly shows that the state excused African Americans because of their race. Because the two African American jurors had been accepted for jury service by both the state and the defense, Harrison argues that the state only peremptorily excused them after it saw that the possible makeup of the jury was eight whites and four African Americans.
The state exercised its ninth peremptory challenge as a strike back against Bill Riley, an African American who testified that he knew the defendant and his family, was a classmate of two of the defendant's sisters and spoke with Harrison socially from time to time. Riley also testified that he had counseled the defendant previously and that his grandson had been arrested or convicted of a crime. Riley also had a problem accepting the law that the testimony of only one witness may be sufficient to convict.
After the state exercised its ninth and tenth[3] peremptory challenges, Harrison reurged his objection to the state striking only African American jurors and motioned for a mistrial. The trial court found that the state's race-neutral reason for striking Riley was apparent from his voir dire examination and noted specifically that Riley knew the defendant and had counseled him.
*888 The state exercised its twelfth peremptory challenge as a strike back against Dorothy Wiley, an African American who testified that one of her relatives had been incarcerated for a cocaine offense and that she believed drug users were victims.
After the state exercised its twelfth peremptory challenge, the defendant requested that the trial court require the state to provide a race-neutral reason as to Wiley. When the trial court required the state to provide a race-neutral reason, the state explained that Wiley had a relative who was a cocaine offender. The trial court accepted this as a race-neutral reason.
La.C.Cr.P. art. 795(B)(1) permits a party to "temporarily accept" a juror by declining to exercise a peremptory challenge when the prospective juror is first questioned and accepted, and then later exercise a peremptory challenge against that juror at any time before the jury panel is sworn. State v. Jasper, 28,187 (La.App.2d Cir.06/26/96), 677 So.2d 553, writ denied, 96-1897 (La.02/21/97), 688 So.2d 521, review denied, 96-1897 (La.05/16/97), 693 So.2d 790. The record clearly shows that a satisfactory race-neutral reason for excusing Riley was apparent on the record; Riley knew Harrison and had counseled him. Nor did the trial court err in finding that the state had offered a race-neutral explanation for excusing Wiley. Jurors with family members who have criminal records can be peremptorily challenged. State v. Mamon, supra.
We accordingly find these assignments of error to be without merit.

Constitutional Violation
Harrison next contends that the actions of the state in using its peremptory challenges to exclude African Americans from the jury panel solely on the basis of race violated his rights to due process and equal protection of the law and to a fair and impartial trial under the Louisiana Constitution.
The same rights which Harrison claims to have been violated by the present jury selection process are the very rights which the United States Supreme Court sought to protect in both Batson, supra, and Purkett, supra. We have previously analyzed the present jury selection process in keeping with those pronouncements and have found no such constitutional violation due to the readily apparent or stated persuasive racially-neutral reasons for the eleven challenges exercised in this case. This assignment of error has no merit.

Mistrial
Harrison contends that the trial court erred in failing to declare a mistrial when several persons made direct and/or indirect references to inadmissible other crimes evidence against him.
The subject statements were made during voir dire. Upon questioning, prospective juror Bill Riley stated, "The only thing I heard that he was back in jail." Although Harrison objected to the statement, the trial court denied his motion for a mistrial.
The second statements were made by Roy Jackson who knew Harrison. When asked if he thought there was a drug problem in Lincoln Parish, the witness replied affirmatively and then elaborated that, "Based on my contact with, I guess, the (garbled) institution, reading the paper. I'm here in the courtroom almost every other day." To this statement by Jackson, the prosecutor responded, "To make it clear for the record soand for the other people in the courtroom, you are a bail bondsman, is that correct?" Jackson replied affirmatively. Again, the court denied Harrison's request for a mistrial based upon a reference to inadmissible other crimes evidence.
Harrison now argues that when these two statements are combined, it follows that the other prospective jurors had concluded the he had committed crimes other than the one for which he was being tried. The defendant further argues that the *889 comment of the prosecutor regarding Jackson's occupation was a direct or at least an indirect reference to other crimes evidence and that a mistrial should have been ordered by the trial court.
We find no violation of La.C.Cr.P. art. 770 by the prosecutor. The record is clear that during the voir dire questioning of Jackson, the prosecutor did not refer directly or indirectly to another crime committed or alleged to have been committed by the defendant. Accordingly, defendant is not entitled to a mandatory mistrial.
Nor do we find that the evidence supports the granting of a discretionary mistrial under the provisions of La.C.Cr.P. art. 771. Generally, a prejudicial remark made by a prospective juror will not mandate the granting of a motion for a mistrial. State v. Guy, 575 So.2d 429 (La.App. 4th Cir.1991), writ denied, 578 So.2d 930 (La.1991). A mistrial is a drastic remedy and, unless mandated by La. C.Cr.P. art. 770, is within the sound discretion of the trial court. Only if substantial prejudice results which would deprive the defendant of a fair trial is a mistrial warranted. State v. Jarman, 445 So.2d 1184 (La.1984).
Prospective juror Jackson never stated that he was Harrison's bail bondsman or mentioned other offenses of the defendant. In fact, he never stated that he knew Harrison to be a criminal. Nor did he relate his occupation to his knowledge of Harrison. The mere elicitation of Jackson's occupation, in a way much like practically every other member of the jury venire, in no way prejudiced Harrison. Accordingly, it could have no effect on Riley's statement that he knew the defendant was back in jail for the present offense.
Moreover, Riley's statement regarding the instant matter is not only unrelated to other crimes evidence but was an unsolicited response to an intended yes or no question by the state. Such unsolicited and unresponsive testimony is not chargeable against the state as grounds for reversing the conviction. State v. James Ray Morvan, 31,511 (La.App.2d Cir.12/09/98), 725 So.2d 515, writ denied, 99-0186 (La.5/28/99), 743 So.2d 659. Under these facts, Harrison was entitled only to an admonishment, which the trial court offered, but which Harrison declined. This assignment of error is without merit.

Multiple Offender Proceedings
The trial court adjudicated Harrison a third felony offender on the basis of two prior convictions: distribution of marijuana and possession of marijuana, second offense. By this assignment of error, Harrison, in part, contends that the state's bill of information charging him as a habitual offender subjected him to "double enhancement." Finding merit to this contention, we pretermit discussion of the remaining issues raised by Harrison relating to the habitual offender proceeding and sentencing.
The subject habitual offender bill of information utilized Harrison's present offense of distribution of cocaine, an April 15, 1987 conviction for distribution of marijuana, criminal docket no. 30,437 and an August 31, 1994 conviction for possession of marijuana, second offense, criminal docket no. 38,281. Harrison claims that his sentence was "doubly enhanced" because the distribution of marijuana conviction in criminal docket no. 30,437 was also used to enhance the penalty for the subsequent conviction of possession of marijuana, second offense in criminal docket no. 38,281.
We agree. The bill of information charging Harrison with second offense possession of marijuana utilized as the underlying felony the earlier distribution of marijuana conviction in docket no. 30,437. Accordingly, the crime of possession of marijuana, second offense required proof of the predicate offense, distribution of marijuana. Said another way, the distribution of marijuana conviction was an element *890 of the crime of possession of marijuana, second offense. It has been held that the use of both a La. R.S. 14:95.1 conviction, carrying of a firearm by a convicted felon, and the underlying felony used as an element of the firearm conviction to enhance under La. R.S. 15:529.1 constitutes double enhancement. State v. Bailey, 97-493 (La.App. 5th Cir.11/12/97), 703 So.2d 1325; State v. Hymes, 513 So.2d 371 (La. App. 4th Cir.1987). We extend these holdings to the present facts as well. It is therefore necessary that we vacate Harrison's enhanced sentence and remand for resentencing. State v. Hymes, supra.

CONCLUSION
For the foregoing reasons, we affirm Harrison's conviction. However, we vacate defendant's enhanced sentence because the use of Harrison's possession of marijuana, second offense conviction and the underlying felony for that conviction in the multiple bill constituted double enhancement. We remand this case to the trial court for resentencing in accordance with this pronouncement. Upon resentencing, if it is determined that Harrison is unrepresented by counsel, the trial judge is directed to conduct a further inquiry into Harrison's claimed indigence.
CONVICTION AFFIRMED; ENHANCED SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.
NOTES
[1] Though the bill of information incorrectly sets forth the crime of offense as La. R.S. 40:967.4, this error is not a ground for dismissal due to the failure of Harrison to complain on appeal and the lack of evidence that this slight error misled the defendant in any way. La.C.Cr.P. art. 464.
[2] We likewise reject Harrison's reliance on State v. Green, supra, in support of this argument. Unlike the present case, Green first made his Batson challenge after the full jury had been selected and sequestered. It was then, obviously as a precautionary, albeit discretionary measure, that the trial court ordered the state to provide a race-neutral reason for all strikes made against African American jurors. Even under those facts, however, this action would have been unnecessary pursuant to La.C.Cr.P. art. 795(C), had the racially neutral reasons for the challenges been apparent from the record.
[3] The state exercised its tenth peremptory challenge against Leon Blankenship, an African American who testified that he had known Harrison for approximately twenty years and had been indicted for distribution or possession of marijuana. Because these reasons, apparent from the record, are race-neutral, we can likewise find no error in this potential juror's dismissal.