829 So.2d 554 (2002)
STATE of Louisiana
v.
Leonard DAVIS a/k/a Perry Brown a/k/a Leonard Washington.
No. 02-KA-387.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2002.
*555 Paul D. Connick, Jr., District Attorney, State of Louisiana, Terry M. Boudreaux, Alan D. Alario, Assistant District Attorneys, Gretna, LA, for State of Louisiana, Plaintiff-Appellee.
Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Leonard Davis, Defendant-Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On March 1, 2001, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Leonard Davis, with theft of goods valued between $100.00 and $500.00, a violation of LSA-R.S. 14:67.10. The defendant pled not guilty at arraignment. Subsequently, the State amended the bill of information to add "Perry Brown" and "Leonard Washington" as aliases of the defendant. On May 2, 2001, a six-person jury found the defendant guilty as charged.
On May 16, 2001, the trial judge denied the defendant's motion for new trial, or, in the alternative, motion to arrest the judgment. Thereafter, the trial judge sentenced the defendant to two (2) years of imprisonment at hard labor. That day, the defendant filed a motion for appeal, which the trial judge granted.
The State filed a bill of information alleging the defendant to be a fourth felony offender. After a hearing on October 3, 2001, the trial judge found the defendant to be a fourth felony offender, vacated the original sentence, and imposed an enhanced sentence of 20 years at hard labor without benefit of probation or suspension of sentence. The trial judge also granted the defendant's motion for appeal filed that day.

FACTS
This case involves a theft at the Big Lots store located at 755 Veterans Boulevard in Metairie, Louisiana on February 17, 2001. At trial, Brian Price, the store manager at Big Lots, testified that he observed a man, who was later identified as the defendant, crouched down in the aisle where the health and beauty aids were sold. Mr. Price watched the defendant as he stuffed items from the shelves into the pockets of his trench coat. Mr. Price testified that he could not tell exactly what the items were, but he could see that the defendant was removing items from their boxes and placing them into his pockets.
Mr. Price followed the defendant to the front of the store and confronted him. He told the defendant that he would "let him go" if he would return the merchandise. Mr. Price explained that he said this in an attempt to delay the defendant, since the police had already been called. Although the defendant denied that he had taken any merchandise, Mr. Price touched the defendant's trench coat and felt an item in one of the pockets. After Mr. Price continued the confrontation, the defendant emptied the pockets of his coat and his pants, where he had concealed several bottles of cologne. According to Mr. Price, the defendant had taken twenty-two bottles of cologne worth $118.00. Mr. Price put the items in a hand basket and placed *556 the basket behind the customer service desk near an unused cash register.
The defendant then walked out of the store through the parking lot, and Mr. Price followed. Shortly thereafter, Mr. Price spotted a police car at the front of the shopping center. He ran to the car and told the officer what had happened inside the store. With Mr. Price in the back seat, the officer drove off in search of the defendant and broadcasted a description of the suspect over the police radio. Deputy Grossnickle of the Jefferson Parish Sheriff's Office was on patrol in the area and responded to the call. He saw the defendant, who matched the description of the suspected shoplifter, at the corner of the 500 block of Veterans Boulevard. Deputy Grossnickle testified that he was just about to complete his shift, so he detained the defendant until another officer, Deputy Rick Lauriano, arrived. Deputy Lauriano placed the defendant in his police unit and went to Big Lots.
At Big Lots, Mr. Price showed Deputy Lauriano the merchandise that he had retrieved from the defendant. Deputy Lauriano testified that Mr. Price told him the retail value of the bottles of cologne, and the total value of the merchandise was $118.00. According to the officer, Mr. Price showed him five different types of perfume or cologne, including three bottles of Lutece, each valued at $10.00; seven bottles of Charlie, each valued at $3.00; four bottles of Exclamation Noire, each valued at $6.00; three bottles of Deluce Vanilla, each valued at $6.00; and five bottles of Gold Mist, each valued at $5.00. Deputy Lauriano stated that the defendant admitted that he had stolen some merchandise from the store, but said he did not "steal a felony." The defendant believed that Mr. Price was trying to "frame him." Finally, Deputy Lauriano testified that he asked the defendant why he was wearing a trench coat when it was 95 degrees outside.
At trial, the defendant testified that he had "picked up" merchandise worth $17.00 or $18.00, including three tubes of toothpaste, a three-pack of soap and two bottles of perfume. He emphatically denied taking twenty-two bottles of perfume. The defendant stated that he knew the difference between a felony and a misdemeanor. He explained that, although he lived in Orleans Parish, he went to Jefferson Parish to steal because in "Jefferson Parish under $100 they more just send you a subpoena to come to court and in Orleans Parish you go to jail on the spot."
The defendant admitted that he had two other aliases, "Leonard Washington" and "Perry Brown." He also acknowledged that he had many felony and misdemeanor convictions. He admitted that he had pled guilty to multiple offender theft in case number 405-997 in Orleans Parish in 1999, but he argued that it was a misdemeanor, not a felony. In the State's rebuttal, Paul Schneider, who has been an assistant district attorney in Jefferson Parish since 1993 and was formerly employed by the Orleans Parish District Attorney's Office from 1978 to 1993, explained that, under the penalty provision of 14:67.10, misdemeanor theft of goods becomes a felony if a person has two prior theft convictions.

LAW AND DISCUSSION
On appeal, the defendant contends that there was insufficient evidence to support his conviction, because the evidence did not exclude every reasonable hypothesis of innocence. The State responds that the evidence was sufficient at trial to support the conviction beyond a reasonable doubt.
The appropriate standard for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the reviewing *557 court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See also State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1292-1293; State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, 690.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
The defendant was convicted of violating LSA R.S. 14:67.10, theft of goods valued between $100 and $500, which provides in pertinent part:
A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:
(1) Intentionally conceals, on his person or otherwise, goods held for sale.
. . . .
The defendant contends that the State did not establish that the value of the merchandise was between $100.00 and $500.00. However, the record reflects that Mr. Price, as well as Deputy Lauriano, testified that the value of the merchandise was $118.00. The defendant further asserts that certain portions of Mr. Price's testimony and Deputy Lauriano's testimony are inconsistent. According to the defendant, Mr. Price testified that the twenty-two items were concealed in the pockets of the defendant's pants, whereas Deputy Lauriano testified that Mr. Price said that the items were in the trench coat. The record does not support the defendant's assertions. At trial, Mr. Price testified that he retrieved the items from the pockets of both the defendant's trench coat and his pants.
The defendant next asserts that the evidence is inconsistent because Mr. Price testified that he showed Deputy Lauriano the aisle where the defendant removed the merchandise, while Deputy Lauriano testified that Mr. Price brought the items outside for him to view. Again, the record fails to support the defendant's assertions. While the officer testified Mr. Price brought the items outside, Mr. Price did not testify that he showed the officer the aisle where the items were removed. The context of Mr. Price's testimony indicates that he had shown the officer the bottles of perfume taken by the defendant, but not that he took the officer to that particular place in the store.
In support of his argument that the evidence was insufficient to support his conviction, the defendant highlights Mr. Price's testimony that there was no videotape of the incident and that the merchandise was unattended in the hand basket while Mr. Price was out of the store. Mr. Price stated that the surveillance tape did *558 not capture the defendant's actions, because the store only has cameras in the clothing section, the stockroom, and over the cash registers. According to Mr. Price, the function of the video surveillance cameras was primarily for observing the cashiers. Thus, the health and beauty aisle, where the defendant was standing, was out of the range of the video cameras. Although he acknowledged that the camera over the cash register would have recorded the events once he placed the items in the basket at the front counter, Mr. Price stated that he did not bring the videotape to court. Nevertheless, Mr. Price emphatically stated that no items were added to the basket during his absence from the store.
Finally, the defendant contends that he could not possibly have placed twenty-two bottles of cologne in his pockets. However, Mr. Price testified that the merchandise was in the pockets of the defendant's coat and pants, and he stated that the defendant was wearing jeans with very deep pockets.
The jury was confronted with the State's evidence that the defendant had placed $118.00 worth of merchandise belonging to Big Lots in his clothing, and the defendant's own testimony that he had taken only $17.00 or $18.00 worth of merchandise. After hearing and evaluating the testimony of the witnesses, the jury believed the State's witnesses and found the defendant guilty as charged. The jury obviously was not persuaded by the defendant's testimony and resolved any discrepancies in the testimony in favor of the State. The Louisiana Supreme Court has stated that "[i]t is the role of the fact-finder to weigh the respective credibilities of witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review." State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). See also State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052.
Viewed in the light most favorable to the prosecution, we find that the evidence is sufficient to establish that any rational trier of fact could have found the defendant guilty of theft of goods valued between $100 and $500 beyond a reasonable doubt. Accordingly, the defendant's argument that the evidence was insufficient to support his conviction is without merit.
The defendant further asserts on appeal that the trial judge improperly found him to be a fourth felony offender, because the State failed to present sufficient evidence that he knowingly and voluntarily pled guilty to the third predicate offense. The State responds that it met the requisite burden of proof.
To prove that a defendant is a multiple offender, the State must establish by competent evidence, that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092, 1103 (La.1982); State v. Williams, 98-651 (La.App. 5 Cir. 2/10/99), 729 So.2d 14, 19. When a predicate conviction was obtained pursuant to a plea of guilty, the State must meet the burden of proof outlined by the Louisiana Supreme Court in State v. Shelton, 621 So.2d 769 (La.1993).
Under Shelton, if a defendant denies the allegations of the multiple bill of information, the State's initial burden is to show the existence of a guilty plea and that the defendant was represented by counsel when the plea was entered. Once the State meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity in the taking of the guilty plea. Id. at 779. If the defendant is *559 successful, the State must prove the constitutionality of the plea by producing a "perfect" transcript of the Boykin[1] colloquy between the defendant and the trial judge, or any combination of a guilty plea form, a minute entry, or an "imperfect" transcript. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State proved that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. Id. at 779-780. See also State v. Neal, 00-41 (La.App. 5 Cir. 5/30/00), 762 So.2d 281, 284.
In the instant case, the multiple offender bill of information alleged that the defendant had thrice before pled guilty: (1) on April 19, 1988 to theft valued between $100.00 and $500.00 in case number 87-1030 in Jefferson Parish; (2) on November 29, 1988 to theft valued between $100.00 and $500.00 in case number 88-2314 in Jefferson Parish; and (3) on June 16, 1999 to "multiple offender theft" in case number 405-997 in Orleans Parish.
On appeal, the defendant only complains about the third predicate offense. The exhibits introduced at the hearing included a minute entry, which indicated that the defendant entered a guilty plea and was represented by counsel, that the defendant was personally advised of his Boykin rights by the trial judge, and that he waived those rights. Also, the documents contain a "Waiver of Constitutional Rights" form signed by the defendant and his attorney. This evidence satisfied the State's initial burden under Shelton, since the evidence showed the existence of the predicate guilty plea and that the defendant was represented by counsel.
Therefore, it was the defendant's burden to produce some affirmative evidence of an infringement of his rights or of a procedural irregularity in the taking of the guilty plea. State v. Shelton, supra at 779. The defendant attempted to meet this burden through his testimony at the multiple offender hearing. He stated that he did not recall being told that he was actually pleading guilty to a felony, rather than a misdemeanor. The defendant acknowledged that he had been explained his constitutional rights, and that he understood that he was going to be receiving 30 days "in the Department of Corrections" for $18.00 theft. He further stated that he knew he would receive 30 days under "an enhancement penalty," but did not know he could be "enhanced ... twice."
According to the bill of information in case number 405-997, the defendant was charged with committing theft of goods from Winn Dixie valued at less than $100 after having twice been convicted of theft in case numbers 88-2314 and 87-3973. The defendant is correct that he was charged with taking goods valued at less than $100.00 in case number 405-997, which ordinarily would be misdemeanor theft. However, the bill of information for the 1999 theft charge alleged that the defendant had two prior theft convictions, one in 1988 and another in 1987. Accordingly, the misdemeanor theft became a felony under LSA-R.S. 14:67.10 B(3), which provides as follows:
When the misappropriation or taking amounts to less than a value of one hundred dollars, the offender shall be imprisoned for not more than six months or may be fined not more than five hundred dollars, or both. If the offender in such cases has been convicted of theft or theft of goods two or more times previously, upon any subsequent conviction *560 he shall be imprisoned, with or without hard labor, for not more than two years or may be fined not more than one thousand dollars, or both.

(Emphasis added).
At the multiple offender hearing, the defense argued that, based on the defendant's testimony, the 1999 plea to multiple offender theft was not knowingly and voluntarily entered. Nevertheless, the trial judge found that the defendant knew what he was doing based on his prior experience with the criminal justice system. The record supports the trial judge's conclusion. In fact, the record reflects that the defendant admitted at trial to approximately eight prior convictions before pleading guilty in 1999.
The question of the credibility of the witnesses is within the sound discretion of the trier of fact, and the credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, supra at 1056. Accordingly, we find that the trial judge did not err in finding that the defendant knowingly and intelligently pled guilty to multiple offender theft in 1999. However, a review of the record reveals that the trial judge erred in finding the defendant to be a fourth felony offender because the enhanced charge of multiple offender theft, to which the defendant pled guilty in 1999, and the 1988 theft used to enhance the 1999 theft to "multiple offender theft" cannot both be used as predicate offenses in a multiple bill proceeding.
In State v. Bailey, 97-493 (La.App. 5 Cir. 11/12/97), 703 So.2d 1325, 1331, this Court held that the State cannot use both a felon in possession of a firearm conviction[2] and the underlying felony used as an element of the firearm conviction in a multiple bill. The Bailey court vacated the defendant's adjudication as a multiple offender, remanded for further proceedings, and stated during an error patent review that "[i]f a felon in possession of a firearm conviction is used to enhance a subsequent conviction, the underlying felony used as an element of the firearm conviction may not be used in the multiple bill, as this constitutes double enhancement." See also, State v. Fletcher, 01-809 (La.App. 5 Cir. 2/26/02), 811 So.2d 1010, 1013, which cited Bailey for this proposition.
Although this case does not involve a felon in possession of a firearm, the reasoning in Bailey is applicable to this case. In State v. Harrison, 32,643 (La.App. 2 Cir. 10/27/99), 743 So.2d 883, writ denied, 99-3352 (La.6/30/00), 765 So.2d 327, the Court held that this reasoning applied, even though the offense at issue was different. In Harrison, the defendant was convicted of second offense possession of marijuana. The State alleged that the defendant was a third felony offender based on a 1987 conviction for distribution of marijuana and a conviction for second offense possession of marijuana in 1994. However, the bill of information in the 1994 second offense possession of marijuana also used the 1987 conviction for distributing marijuana as the underlying felony. As such, the Harrison court concluded that the use of both of these convictions in the multiple bill constituted double enhancement. Id. at 889-890.
Based on the foregoing, we find that the defendant has been subjected to double enhancement, because the multiple bill uses the 1999 multiple offender theft conviction, as well as the underlying 1988 theft conviction that was used to enhance the 1999 misdemeanor theft to a felony, as predicate convictions.
In State v. Bailey, supra at 1331, this Court vacated the defendant's finding as *561 an habitual offender and remanded the case for resentencing of the defendant for possession of cocaine, because his sentence for this crime was vacated when he was sentenced on the multiple bill. The Court also stated that "[f]urther habitual offender proceedings, if any, must await a new action by the State on a properly-drawn bill of information."
As recognized by the Louisiana Supreme Court, as well as this Court, the principles of double jeopardy do not apply to sentence enhancement proceedings, and a defendant may be retried as a habitual offender. State v. Dorthey, 623 So.2d 1276, 1279 (La.1993); State v. Brooks, 01-864 (La.App. 5 Cir. 1/29/02), 807 So.2d 1090, 1103. Accordingly, in the instant case, we vacate the defendant's habitual offender adjudication and sentence, and we remand for resentencing on his conviction for theft of goods valued between $100 and $500. If the State elects to proceed with any further habitual offender proceedings, they must be brought by the State through the filing of a new multiple offender bill of information.
In his final assignment of error, the appellant requests a review of the record for errors patent. Accordingly, we have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir. 1990). The record reveals no patent errors.
For the reasons set forth above, we affirm the defendant's conviction for theft of goods valued between $100 and $500, and we vacate the defendant's adjudication as a fourth felony offender and the 20-year sentence imposed in accordance with this adjudication. We remand the matter for resentencing on the original conviction for theft of goods valued between $100 and $500, and for any further proceedings consistent with this opinion.
CONVICTION AFFIRMED; MULTIPLE OFFENDER ADJUDICATION AND SENTENCE VACATED; REMANDED.
NOTES
[1] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[2] LSA-R.S. 14:95.1